**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| BALTIMORE AIRCOIL COMPANY, INC.,    ) | |
|                        ) | |
|         Plaintiff,          ) | |
|                        ) | |
| v.                         ) | |
|                        ) | |
| SPX COOLING TECHNOLOGIES, INC.    ) | Civil Action No. 1:13-cv-02053 |
|                        ) | |
|         Defendant.        ) | |
|                        ) | |
|                        ) | |
|                        ) | |
|                        ) | |

**<u>APPENDIX TO MEMORANDUM IN SUPPORT TO DEFENDANT SPX COOLING
TECHNOLOGIES, INC.'S MOTION TO DISMISS PLAINTIFF'S CLAIMS OF
WILLFUL INFRINGEMENT IN THE FIRST AMENDMENT COMPLAINT FOR
PATENT INFRINGEMENT FOR FAILURE TO STATE A CLAIM</u>**

# EXHIBIT A



Air Conditioning | Heating | Refrigeration
the NEWS

Home

# Commercial Products Make Heads Turn

By [Joanna R. Turpin](#)
February 25, 2005



York's Predator low-profile packaged heating-cooling units are lightweight and easy to conceal.
ORLANDO, Fla. - Nothing draws attention like a big piece of equipment sitting in a booth. That was definitely the case at the 2005 International Air-Conditioning, Heating, Refrigerating Exposition (AHR Expo), where exhibitors set up their cooling towers, chillers, rooftop units, and other large mechanical systems to catch the eyes of attendees.

**Airbloc** (www.airbloc.com) featured its UAC surface-mounted and UACR recessed air curtains. Both models are suitable for a wide range of commercial applications, including restaurants, bars, schools, and lobby areas. These air curtains, which have been designed to separate internal and external environments, can be heated or unheated to suit the building's requirements.

**Baltimore Aircoil** (BAC, www.baltimoreaircoil.com) introduced a number of new items for its cooling towers, including a full range of control panels. Glenn Babcock, marketing manager, noted that these control panels include electromechanical starts, VFDs, and safety disconnect switches. "The BAC control package is pre-engineered to work seamlessly with all BAC units, providing a single-source solution for all evaporative cooling projects," he noted.

The company also announced the release of an automatic bearing greaser to its list of aftermarket parts and maintenance items. The greaser features a positive displacement pump, which allows for installation up to 30 feet away from the bearings.

Also on display was a new cooling tower vacuum, which is lightweight, portable, and easy to use, the company said. The vacuum features a heavy-duty pump and removes up to 50 gallons of water and debris per minute. A new pressure washer, which is ideal for cleaning the fill and basins in all types of evaporative cooling equipment, was also introduced.

**Berner** (www.berner.com) introduced an in-ceiling-mounted air curtain, which is typically installed above the doorway. This air curtain, whose performance is certified by Air Movement and Control Association International Inc. (AMCA), can be discreetly positioned in the ceiling and is easily accessible for service, the company said. Berner noted that its products work together to provide

balanced volume, velocity, and uniformity.



Baltimore Aircoil introduced control panels and aftermarket parts including an automatic bearing greaser and a new cooling tower vacuum.

**Carrier** (www.carrier.com) introduced its Aquaforceâ„¢ air-cooled chillers, which use R-134a and range from 80 to 500 tons. The chiller delivers full-load efficiency ratings of up to 10.6 EER and part-load ratings up to 14.5 EER. An AeroAcoutisticâ„¢ fan system keeps the chillers quiet.

An expanded line of WeatherMasterâ„¢ constant-volume packaged rooftop units also was introduced. The new line offers 18-, 20-, and 25-ton units and the entire product line complies with the requirements of Energy StarÂ® and exceeds ASHRAE 90.1 standards. Carrier also highlighted its new Centurionâ„¢ rooftop units, which feature R-410A. Bruce Burdon, director of product management and marketing, noted that the rooftop units provide easy access for service.

**Delta Cooling Towers** (www.deltacooling.com) featured its engineered plastic cooling towers, which last longer and won't corrode, according to chief executive officer John Flaherty. Specifically highlighted was the company's closed-circuit evaporative fluid cooler with pumping skid, which includes pumps, control panel, prewiring of skid components to the panel, piping complete on skid, and other options appropriate for application.

**Fedders** (www.fedders.com) introduced its quietest line of packaged terminal air conditioners (PTACs) and packaged terminal heat pumps (PTHPs). The new products feature wireless remote controls, center-mount electronic controls, digital temperature readouts, and easy-to-clean filters.

Fedders also highlighted its new wall-mounted products, including the FV air conditioning and FH heat pump series. These 10.3-EER wall-mount units are designed to provide the industry with a stocked product at an affordable price, the company said. It also showcased its Fedders Addison DC product line, a packaged direct-expansion (DX) heating-cooling unit that provides fresh air, ventilation, and energy recovery for commercial applications.

**Friedrich** (www.friedrich.com) displayed its new digital PTACs. Features include digital temperature control, one-touch operation, and an internal diagnostic program designed to make maintenance easier. There is a five-year warranty on the sealed refrigeration system.

**Magic Aire** (www.magicaire.com) highlighted its HBAW Series of belt-drive, horizontal chilled-water blower coil units. Victor Moreno said these units provide flexibility of design due to belt-driven fans, multiple coil row capability, and factory modifications that are available. Options include chilled-water and DX cooling coils, hot water/steam heating coils, pleated filters, mixing boxes, and discharge grilles available from stock in 2- to 20-ton sizes.

Also on display were BV Series vertical belt-driven air handlers with variable-pitch motor sheaves, which allow greater control to deliver a desired cfm. Available options are chilled-water and DX cooling coils, heating coils, discharge, and return boxes. Units are stocked from 2 to 10 tons.

**Marley Cooling Technologies** (www.marleyct.com) unveiled its MH fluid cooler with CoolBoostâ„¢ technology. The CTI-certified fluid cooler incorporates fill media and more circuits of coil to save footprint space and increase performance by as much as 10 percent, the company said.

Marc Michael, vice president and general manager, noted that using fill media with additional coils offers customers greater cooling efficiency and long-term cost savings. "The core location at the bottom allows more efficiency, and the thermal equalizer redistributes cold water across the coil, so there are no dead spots," he noted. The MH fluid cooler is built to handle 100 to 650 tons of fluids ranging from water to glycols.

**Stulz Air Technology Systems** (www.stulz-ats.com) introduced CyberChillâ„¢ cabinets. These high-performance (24-kW) cooled enclosure systems are designed to cool the enclosed servers, not the room. The closed-loop chilled-water design extracts heat from within the cabinet, which eliminates having to expel the hot air into the data room's environment.

The company also introduced the CyberAiR EC unit, which combines precision control and monitoring of the environment with the ability to exchange data with a building automation system, the company said.

**Unico** (www.unicosystem.com) featured its UniChiller-RC outdoor heating-cooling unit, which provides both hot and cold water for central heating and/or cooling. The unit features reverse-cycle operation, a quiet side fan discharge system, sealed refrigerant system, stainless steel pump, and minimal footprint, the company said.

**York** (www.york.com) introduced the Predatorâ„¢ low-profile series, which provides contractors with a packaged heating-cooling unit that is lightweight and easy to conceal. The series of new light commercial units provide EER ratings from 9.0 to 11.5 and up to 80-percent AFUE on gas/electric models. For maximum field flexibility and minimum inventory requirements, the series offers a convertible airflow design for down and side discharge that requires no panel cutting. All indoor fan motors are belt-driven and can handle most airflow requirements.

**Publication date:** 02/28/2005

Joanna Turpin is Contributing Editor. E-mail her at JoannaTurpin@cox.net.

# EXHIBIT B



Home

# Marley Cooling Technologies Inc.: Fluid Cooler

April 28, 2005

The MH fluid cooler with CoolBoostâ„¢ technology combines the function of a cooling tower and heat exchanger into one closed-loop system. It features mechanical, induced-draft technology with crossflow fill media and coil bundle. The unit incorporates fill media and more circuits of coil to save footprint space and increase performance by as much as 10 percent when compared to similar systems, claims the company. The fluid cooler is built to handle 100 to 650 tons of fluid, including water, glycols, quench oils, and plating solutions. According to the manufacturer, the unit cools up to 50 gallons per minute more than competitive models with equal footprints.

**Marley Cooling Technologies Inc.,** a unit of SPX Corp., 7401 West 129 St., Overland Park, KS 66213; 913-664-7400; 913-664-7753 (fax); www.marleyct.com.

eProduct #183

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681 DOC (ANx)                    Date:  May 16, 2012

Title:  PROXYCONN INC. –V- CORPORATION, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Julie Barrera                                    ____N/A____
Courtroom Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present                             None Present

**PROCEEDINGS: (IN CHAMBERS):  ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS**

Before the Court is a Motion to Dismiss ("Motion") filed by Defendants Microsoft
Corporation ("Microsoft"), Hewlett-Packard Company ("Hewlett-Packard"), Acer
America Corporation ("Acer"), and Dell Inc. ("Dell").  (Dkt. 34).  The Court finds the
matter appropriate for decision without oral argument.  Fed R. Civ. P. 78; Local R. 7-15.
After considering the moving, opposing, and replying papers, the Court GRANTS the
Motion.

I.    **Background**

The gravamen of the Consolidated Complaint filed by Plaintiff Proxyconn Inc.
("Plaintiff") is that each of four Defendants are directly and indirectly infringing
Plaintiff's method patent.

a.  **The Court Consolidated Four Lawsuits**

Plaintiff filed four separate complaints against four individual Defendants
Microsoft, Hewlett-Packard, Acer, and Dell.  On January 3, 2012, the Court ordered all
parties to show cause why these four cases should not be combined into one and stated
that, if there were no objections, Plaintiff "shall file an Amended Complaint."  *See* Order
(Dkt. 9).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                    Date: March 16, 2012
                                                                                Page 2

_____

     On January 17, 2012, the Court ordered that these four separate lawsuits be combined into one because no party objected to consolidation.  *See* Order (Dkt. 14).  As per the January 3, 2012, Order, Plaintiff filed an amended complaint against all four Defendants.  *See* Consolidated Compl. (Dkt. 23).

### b. Allegations of Direct Patent Infringement

     The Consolidated Complaint brings four "Counts" of infringement of U.S. Patent No. 6,757,717 ("'717 Patent"); one count against each Defendant.  The '717 Patent is attached to the complaint.

     Each count has virtually identical language, with the only difference being the substitution of a different Defendant's name and different allegedly infringing technology, described as "personal computers" or "computer systems."  Each count alleges that the individual Defendant:

> . . . has been and still is directly . . . infringing at least claims 1, 10, 11 and 22 of the '717 patent . . . by making, using, selling, offering to sell, or importing, without license or authority, [infringing technology] . . . .

*See id.* ¶¶ 15-16 (Microsoft), 21-23 (Hewlett-Packard), 29-30 (Acer), 35-37 (Dell).

     Each count alleges that each Defendant's infringing technology "include[s]" computers using a method; the method's description parrots the description of Plaintiff's method patent.  *See id.* Ex. A.  Specifically, each count alleges that Defendant's infringing technology:

> . . . include[s] a sender computer and a receiver computer communicating through a network, with each computer equipped with a method for creating digital digests on data and the receiving computer including a means for comparing digital digests.

     Each count goes on to allege that:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                    Date: March 16, 2012
                                                   Page 3

---

> In particular, these [infringing technologies] contain software including, but
> not limited to, the Remote Differential Compression ("RDC") technology
> used in at least Microsoft's Windows Server 2003 R2, Windows Server
> 2008, Windows Small Business Server 2003, Windows Small Business
> Server 2008, Windows Small Business Server 2011, Windows XP with
> Service Pack 3, Windows Vista, and Windows 7 operating systems.

*See id.* ¶¶ 14 (Microsoft), 21 (Hewlett-Packard), 28 (Acer), 35 (Dell).

### c.  Allegations of Indirect Patent Infringement

Each count alleges that the individual Defendant:

> . . . has been and still is indirectly infringing, by way of inducing
> infringement by others of the '717 patent, by . . . making, using, importing,
> offering for sale, and/or selling, without license or authority, software for
> use in systems that thereby fall within the scope of at least claims 1, 10, 11
> and 22 of the '717 patent.

*See id.* ¶¶ 15 (Microsoft), 22 (Hewlett-Packard), 29 (Acer), 36 (Dell).

Nearly verbatim allegations also follow each count alleging that the
individual Defendant is "contributing to the infringement by others of the '717
patent . . . ." *See id.* ¶¶ 16 (Microsoft), 23 (Hewlett-Packard), 30 (Acer), 37
(Dell).

### d.  Allegations of Knowledge of Indirect Patent Infringement

In addition, each count alleges that the individual Defendant "[s]ince at least the
filing of the complaint, . . . has knowledge of the '717 patent and has had the specific
knowledge that the combination of its software and computer systems described above
infringe the '717 patent." *See id.* ¶¶ 15-16 (Microsoft), 22-23 (Hewlett-Packard), 29-30
(Acer), 36-37 (Dell).

### e.  The Present Motion to Dismiss

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                    Date: March 16, 2012
                                                  Page 4

_____

All four Defendants filed the present Motion to Dismiss (Dkt. 34).  While Acer, Dell, and Hewlett-Packard moved only as to the claims directed against their respective entities, Microsoft moved as to the claims directed against all four Defendants.  Mot. at 2 n.2.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief.[1]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) can not be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact."  *Scott v.*

_____

[1] A Rule 12(b)(6) motion raises a "purely procedural question" that is controlled by law of the circuit in which the federal court sits, not the law of the Federal Circuit. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 793 (Fed. Cir. 2000).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                          Date: March 16, 2012
                                                         Page 5

---

*Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

**III.     Discussion**

Defendants argue that dismissal under Rule 12(b)(6) is appropriate because Plaintiff fails to plead: (1) facts other than the threadbare recitation of Federal Rule of Civil Procedure Form 18, and such facts are necessary to put Defendants on notice of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                    Date: March 16, 2012
                                                   Page 6

---

how their acts constitute direct infringement; and (2) Defendants' pre-suit knowledge of
another's patent infringement, which is an element of the indirect infringement claim.

### a.  Direct Infringement of Plaintiff's method patent

The parties dispute whether Plaintiff states a claim for direct infringement because
Plaintiff parrots the language of Federal Rule of Civil Procedure Form 18.  As this Court
has previously noted, there is a split of authority on this issue.  *See Acco Brands USA
LLC v. Hewlett Packard Co.*, SACV 11-275 DOC MLGX, 2011 WL 2516514, *2 (C.D.
Cal. June 23, 2011) (granting motion to dismiss because complaint did not describe
which of defendant's numerous "products" were allegedly infringing).

Form 18 requires only the following: (1) an allegation of jurisdiction; (2) a
statement that the plaintiff owns the patent; (3) a statement that defendant has been
infringing the patent by one or more of the activities proscribed under 35 U.S.C. § 271;
(4) a statement that the plaintiff has given the defendant notice of its infringement; and
(5) a demand for an injunction and damages.  *See* Fed. R. Civ. P. Form 18; *Guzik
Technical Enterprises, Inc. v. W. Digital Corp.*, 11-CV-03786-PSG, 2011 WL 6013006,
*2 (N.D. Cal. Dec. 2, 2011) (summarizing Form 18).

Federal Rule of Civil Procedure 84 provides that forms such as Form 18 "suffice"
for purposes of a motion to dismiss.  Fed. R. Civ. P. 84; *see* 12 Fed. Prac. & Proc. Civ. §
3162 (2d ed.).  The Federal Circuit, applying Fifth Circuit law regarding Rule 12(b)(6),
has held that a pro se plaintiff's patent infringement claim that echoed the five
requirements in Form 18 "met the low bar for pro se litigants to avoid dismissal."
*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007) (citing
predecessor Form 16).

The Court is persuaded by those authorities which hold that threadbare recitations
of the language in Form 18 is no longer sufficient to state a claim.  As those other courts
eloquently explain, "the forms purporting to illustrate what level of pleading is required
do not reflect the sea change of *Twombly* and *Iqbal*."  *Tyco Fire Products LP v. Victaulic
Co.*, 777 F. Supp. 2d 893, 905 (E.D. Pa. 2011) (granting dismissal of "sparse pleading"
that merely complied with Form 18).  These courts reason that, "notwithstanding the
suggestion in Form 18 that specificity is not necessary, most courts have, in the wake of
*Twombly* and *Iqbal*, required some level of specificity."  *Wistron Corp. v. Phillip M.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                    Date: March 16, 2012
                                                   Page 7

---

*Adams & Associates, LLC*, C-10-4458 EMC, 2011 WL 4079231, *4 (N.D. Cal. Sept. 12, 2011).

      Furthermore, since *McZeal*, the Federal Circuit has recognized that "Form 18 is a sample pleading for patent infringement, but . . . was last updated before the Supreme Court's *Iqbal* decision." *Colida v. Nokia, Inc.*, 347 F. App'x 568, 571 (Fed. Cir. 2009). Given that the Federal Circuit itself recognizes that Form 18 may be inadequate, this Court "agrees with those courts that apply *Iqbal* and *Twombly*'s 'plausibility' standard to direct patent infringement actions." *Medsquire LLC v. Spring Med. Sys. Inc.*, 2:11-CV-04504-JHN, 2011 WL 4101093, *2-3 (C.D. Cal. Aug. 31, 2011).

      Applying *Iqbal* and *Twombly*, it is clear that Plaintiff's allegations are too conclusory when they merely allege that each Defendant is directly infringing "by making, using, selling, offering to sell, or importing" technology that infringes Plaintiff's method patent. *See* Consolidated Compl. ¶¶ 14 (Microsoft), 21 (Hewlett-Packard), 28 (Acer), 35 (Dell).

      According, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's direct infringement claims as to all Defendants.

      **b.  Indirect Infringement**

      Plaintiff concedes that it "can only specifically allege that Defendants had knowledge of the patent-in-suit as of the filing of the original complaint." Opp'n at 4 n.1. Thus, the dispute is whether a complaint fails to state a claim for indirect patent infringement where the *only* allegation that purports to establish the knowledge element is the allegation that the complaint itself or previous complaints in the same lawsuit establish the defendant's knowledge of the patent.  There is a split of authority on this issue.

      Plaintiff brings both contributory patent infringement and induced patent infringement claims.  Both claims require that defendant's conduct—inducing or contributing to another's infringement—occur *after* the defendant knew: (1) of patent-in-suit; and (2) that the direct-infringers' "acts constitute patent infringement." *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068, 179 L. Ed. 2d 1167 (2011) (interpreting "knowing" requirement for inducing infringement claim under 35 U.S.C. § 271(b)); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488, 84 S. Ct.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 11-1681-DOC (ANx)                           Date: March 16, 2012
                                                          Page 8

---

1526, 1533 (1964) (interpreting "knowing" requirement for contributory infringement under 35 U.S.C. § 271(c)); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc); 2 Annotated Patent Digest § 10:44.

 Plaintiff's argument requires this Court to bootstrap the knowledge Defendants *now* have based on Plaintiff's filing of the Complaint onto defendant's acts *before* Plaintiff filed its complaint. Yet, a defendant can not be held liable because it induced or contributed to another's acts *before* the defendant had knowledge, because to do so effectively holds a defendant liable for acts it did without knowledge. *See e.g. Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695, 48 U.S.P.Q.2d 1610 (Fed. Cir. 1998) (reversing a finding of liability for inducing infringement because liability could not be predicated on any acts that occurred prior to defendant having notice of the patent); *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F. Supp. 2d 1152, 1165–66 (C.D. Cal. 2001) (granting summary judgment dismissing inducement and contributory infringement claim because there was no evidence that accused infringer knew of the patent prior to the lawsuit); *Zamora Radio, LLC v. Last.FM, Ltd.*, 2010 WL 5140678, *12 (S.D. Fla. 2010) (granting accused infringer summary judgment on inducing infringement claim because the accused infringer had no knowledge of the patent before the complaint was filed).

 Furthermore, requiring a Plaintiff to plead knowledge based on facts other than the filing of the present lawsuit furthers judicial economy and preserves parties' resources by encouraging resolution prior to filing a lawsuit. Pre-litigation attempts at resolution are especially desirable in patent cases, which are often expensive and thus resolved by settlement. Indeed, Plaintiff could have notified Defendants of their alleged infringement and sought an amicable resolution at any time prior to filing this suit. Defendants should not be punished for Plaintiff's failure to do so.

 For these reasons, the Court follows the authorities that hold that "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *See Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) (granting motion to dismiss indirect infringement claim because plaintiff alleged only the defendants had knowledge of the patent "at least since the date of the suit"); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009) (same); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, C 11-04049 JW, 2012 WL 1030031, *4 (N.D. Cal. Mar. 22, 2012) (granting motion to dismiss indirect

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 11-1681-DOC (ANx)                     Date: March 16, 2012
                                                    Page 9

---

infringement claim because plaintiff "has not alleged any facts to suggest that Defendants
. . . had knowledge of the '427 Patent prior to the filing of the Complaint."); *McRee v.
Goldman*, 11-CV-00991-LHK, 2011 WL 4831199, *4-5 (N.D. Cal. Oct. 12, 2011)
(granting motion to dismiss indirect infringement claim because the complaint "does not
allege that [defendants] knew of Plaintiff's '269 Patent" at the time of the defendants'
alleged acts of inducement, because allegations that "Plaintiff notified [defendants] of the
suspected infringement" were insufficient); *cf. Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F.
Supp. 2d 868, 892 (N.D. Cal. 2011) (granting motion to dismiss induced patent
infringement claim because complaint "only alleged in conclusory terms that the
defendants have received notice of the patents").

     Plaintiff cites cases that are unpersuasive because they are factually
distinguishable.  For example, in *Trading Technologies*, the complaint alleged additional
facts *other than the filing of the complaint* that established the defendants' knowledge.
*See Trading Technologies Int'l, Inc. v. BCG Partners, Inc.*, 10 C 715, 2011 WL 3946581,
*4 (N.D. Ill. Sept. 2, 2011) (denying motion to dismiss in part because complaint "alleges
various other grounds from which the Court may infer actual knowledge of the patents at
issue, including press coverage, previously filed litigation, consent judgments entered in
companion cases").  In *Groupon*, the complaint alleged that the defendant had knowledge
but did not specify when it was acquired; the courts reasoned that allegations without a
time period were sufficient because a motion to dismiss requires all inferences to be
drawn in the plaintiff's favor.  *See Groupon Inc. v. MobGob LLC*, 10 C 7456, 2011 WL
2111986 (N.D. Ill. May 25, 2011) (holding that it "is reasonable to infer that [defendant]
had actual knowledge of [plaintiff's] public patent" and only stating in dicta that
defendant "has such knowledge now and allegedly continues its activities").

     In addition, Plaintiff's cases are based on an incorrect understanding of the
consequences of granting a motion to dismiss.  In *Trading Technologies*, the court denied
the motion to dismiss because it feared that granting the motion would allow "a defendant
. . . [to] avoid liability for an indirect infringement claim . . . simply because it happened
to learn of the patent in connection with a lawsuit."  *Trading Technologies Int'l, Inc. v.
BCG Partners, Inc.*, 10 C 715, 2011 WL 3946581, *4 (N.D. Ill. Sept. 2, 2011).  This fear
is completely unfounded.  In fact, nothing prevents a plaintiff from filing a new lawsuit
alleging that the knowledge requirement is established because the Defendant is aware of
the previous lawsuit.  Alternatively, Federal Rule of Civil Procedure 15(d) provides a
procedure for pleading post-suit facts.  *See* Fed. R. Civ. P. 15 ("On motion and

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 11-1681-DOC (ANx)                    Date: March 16, 2012
                                                   Page 10

---

reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

        Finally, the Court is not persuaded that, as some courts urge, "the interests of judicial economy" favor denying a motion to dismiss because "by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge." *See Walker Digital, LLC v. Facebook, Inc.*, CIV. 11-313-SLR, 2012 WL 1129370, *6 n.11 (D. Del. Apr. 4, 2012). Such a view gives too little weight to the judicial inefficiencies and parties' expenses in litigating potentially meritless claims. Indeed, denying a motion to dismiss could create a Kafkaesque scenario in which a defendant is entangled in senseless, expensive litigation. Imagine that a plaintiff files a claim for indirect infringement alleging that the complaint establishes the defendant's knowledge. The same day, the defendant ceases all activity. Yet, under Plaintiff's rule, the defendant could not succeed on a motion to dismiss because, even though the defendant only learned of the patent the day of the complaint, defendant's knowledge is bootstrapped onto its conduct prior to the complaint's filing. Only at summary judgment—after hundreds of thousands of dollars are wasted on discovery—could defendant finally prevail by showing that it *lacked knowledge at the time its acts of contribution or inducement occurred*.

        In sum, the Court adopts the following rule: a complaint fails to state a claim for indirect patent infringement where the *only* allegation that purports to establish the knowledge element is the allegation that the complaint itself or previous complaints in the *same* lawsuit establish the defendant's knowledge of the patent. Thus, Plaintiff fails to state a claim for indirect infringement when it merely alleges that "[s]ince at least the filing of the complaint, [Defendant] has had knowledge of the '717 patent." *See* Consolidated Compl. ¶¶ 15, 22, 29, 36.

        Because Plaintiff concedes that it can not allege Defendants' knowledge of the patent-in-suit prior to the filing of the original complaint in this lawsuit, the Court DISMISSES WITH PREJUDICE the indirect infringement claims against all four Defendants.

### II.    Disposition

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-1681-DOC (ANx)                                  Date: March 16, 2012
                                                                Page 11

---

      For the reasons stated above, the Court GRANTS Defendants' motion to dismiss.
The Motion is GRANTED WITHOUT PREJUDICE as to Plaintiff's direct infringement
claims and GRANTED WITH PREJUDICE as to Plaintiff's indirect infringement claims.

      Plaintiff shall file an amended complaint, if at all, by May 29, 2012.

MINUTES FORM 11
CIVIL-GEN                                                   Initials of Deputy Clerk: jcb

# ATTACHMENT 1

2012 WL 4514138
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

EON CORP. IP HOLDINGS, LLC, Plaintiff,
v.
SENSUS USA, INC., et al., Defendants.
No. C–12–1011 EMC. | Docket Nos. 477, 479, 490,
491. | Oct. 1, 2012.

**Attorneys and Law Firms**

Chad Phillip Ennis, Craig Jepson, Daniel Scardino, Jeff R Johnson, Reed & Scardino LLP, Cabrach J. Connor, Attorney at Law, Austin, TX, Christopher A. Hohn, Jennifer S. Coleman, John V. Picone, III, Hopkins and Carley, San Jose, CA, for Plaintiff.

Abraham Delao, Brian D. Range, Marvin Craig Tyler, Wilson Sonsini Goodrich and Rosati, Fred I. Williams, Akin Gump Strauss Hauer & Feld LLP, Austin, TX, Stefani Elise Shanberg, Wilson Sonsini Goodrich & Rosati P.C., Lowell D. Mead, Cooley LLP, Larry Scott Oliver, Diana Luo, Jessica Jean Tipton, Zahra Hayat, Morrison & Foerster LLP, Kevin E. Cadwell, Baker Botts L.L.P., Ashish Nagdev, Bryan K. Anderson, Sidley Austin LLP, Michael Brett Levin, Stefani Elise Shanberg, Wilson Sonsini Goodrich & Rosati a Professional Corporation, Jeffrey E. Ostrow, Patrick E. King, Simpson Thacher & Bartlett LLP, Michael E. Zeliger, KL Gates LLP, Palo Alto, CA, Jonathan Garwood Graves, Cooley LLP, Reston, VA, Alison Marie Haddock, Matthew Sean Yungwirth, David Carl Dotson, John Robert Gibson, Louis Norwood Jameson, Stephanie Anne Hansen, Duane Morris, LLP, Atlanta, GA, Richard L. Seabolt, Duane Morris LLP, Teresa Wang Ghali, Akin Gump Strauss Hauer & Feld LLP, Jessica Lea Hannah, Kilpatrick Townsend and Stockton LLP, San Francisco, CA, James Patrick Kelley, Otis W. Carroll, Jr., Ireland Carroll & Kelley, Melvin R. Wilcox, III, Yarbrough-Wilcox, PLLC, Otis W Carroll, Jr., Ireland Carroll & Kelley, Tyler, TX, Joseph A. Powers, Duane Morris LLP, Philadelphia, PA, Wesley Wei-En Yuan, Duane Morris, Houston, TX, Gerald C. Conley, Mark Aaron Shoffner, Jason Napoleon Thelen, Andrews Kurth LLP, Eric Joseph Klein, Kellie M. Johnson, Akin Gump Strauss Hauer & Feld LLP, Jerry Robin Selinger, Patterson & Sheridan LLP, Dallas, TX, Ralph William Tarr, Ralph W. Tarr, Attorney at Law, Calabasas, CA, Robert Alan Gutkin, Andrews Kurth LLP, Washington, DC, Douglas Kubehl, Baker Botts L.L.P., Johnson Kuncheria, Todd Eric Landis, Akin Gump Strauss Hauer & Feld, LLP, Dallas, TX, Andrea B. Reed, George S. Haight, IV, John J. Cotter, K & L Gates LLP,

Boston, MA, Steven David Moore, Carl E. Sanders, James Lyle Howard, Kilpatrick Townsend Stockton, Winston-Salem, NC, Byron Robert Chin, Kilpatrick Townsend and Stockton LLP, Menlo Park, CA, Lawrence M. Hadley, Hennigan Bennett and Dorman, Los Angeles, CA, for Defendants.

**Opinion**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

EDWARD M. CHEN, District Judge.

**\*1** Pending before the Court are multiple Defendants' motions to dismiss Plaintiff EON's Second Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court previously dismissed Plaintiff's First Amended Complaint with leave to amend based on, *inter alia,* Plaintiff's failure to allege adequate facts to support claims for indirect and willful infringement. *See* Docket No. 446 (minute entry), 460 (transcript of hearing). Though they bring separate motions, Defendants essentially argue that Plaintiff's second amended complaint ("SAC"), Docket No. 456, continues to fall short of the standards for adequate pleading.

In a hearing on September 28, 2012, all parties were represented by counsel and had the opportunity to give argument on the pending motions. For the reasons stated on the record, the Court **GRANTED IN PART** and **DENIED IN PART** Defendants' motions to dismiss. As a brief summary, the Court denied the motions as to Plaintiff's claims for indirect infringement under theories of contributory or induced infringement. Though the claims for indirect infringement both require knowledge of the patent, the Federal Circuit has recently held that post-filing knowledge is sufficient to meet this requirement. *In re Bill of Lading Transmission and Processing System Patent Litigation,* 681 F.3d 1323, 1345 (Fed.Cir.2012). Plaintiff has sufficiently alleged knowledge under this standard. See, e.g., SAC ¶ 75. Similarly, Plaintiff has sufficiently alleged lack of substantial non-infringing use as required to show contributory infringement, and intent to induce as required to show induced infringement. *See, e.g.,* SAC ¶¶ 73–75, 147–48.

The Court granted Defendants' motions to dismiss Plaintiff's claim for willful infringement. Unlike with indirect infringement, allegations of post-filing knowledge are generally insufficient to make out a case

for willful infringement. *In re Seagate Tech., LLC,* 497 F.3d 1360, 1374 (Fed.Cir.2007). Plaintiff concedes that the SAC only alleges that Defendants had knowledge as of the date of the original Complaint's filing or service. Opp., Docket No. 517, at 3; *see e.g.* SAC ¶ 75. The Federal Circuit has noted that post-filing knowledge may be sufficient to support a claim of willful infringement where a defendant violates a preliminary injunction secured by the plaintiff. *Seagate,* 497 F.3d at 1374. It held, however, that a "patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id.* Plaintiff has sought no such injunction here.

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's willful infringement claims without prejudice and **DENIES** Defendants' motions to dismiss on all other grounds.

This order disposes of Docket Nos. 477, 479, 490, and 491.

**\*2** IT IS SO ORDERED.

---

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

# ATTACHMENT 2

2012 WL 3283371
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Marshall Division.

INMOTION IMAGERY TECHNOLOGIES,
Plaintiff,
v.
BRAIN DAMAGE FILMS, et al., Defendants.
Cause No. 2:11–CV–414–JRG. | Aug. 10, 2012.

**Attorneys and Law Firms**

Douglas L. Bridges, Heninger Garrison Davis, Birmingham, AL, Graham Firestone, Jacqueline K. Burt, Heninger Garrison Davis LLC, Atlanta, GA, William Ellsworth Davis, III, The Davis Firm, PC, Longview, TX, for Plaintiff.

Scott A. Meehan, Law Office of Scott A. Meehan, Westlake Village, CA, Brian C. Harrison, The Law Firm of Brian Harrison, Washington, DC, Michael Jay Davis, Attorney at Law, Mason, OH, for Defendants.

**Opinion**

### *MEMORANDUM OPINION & ORDER*

RODNEY GILSTRAP, District Judge.

### I. INTRODUCTION

**\*1** Before the Court is Defendant Galaxy Internet Group, LLC's ("Galaxy") Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. No. 8). After carefully considering the parties' written submissions, the Court **GRANTS–IN–PART** and **DENIES–IN–PART** the Motion.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2011, InMotion Imagery Technologies ("InMotion") filed this lawsuit accusing thirteen defendants of infringing U.S. Patent No. 6,526,219 entitled "Picture–Based Video Indexing System" ("the '219 patent"). The infringement allegations against each Defendant are substantially identical. Representative of such (and with regard to Galaxy specifically), the Complaint asserts:

41. Upon information and belief, Galaxy has infringed and continues to infringe one or more claims of the '291 patent by making, using, providing, offering to sell, and selling (directly or through intermediaries), in this district and elsewhere in the United States, video indexes with images that are displayed in windows wherein at least one window displayed motion imagery.

42. Upon information and belief, Galaxy has also contributed to the infringement of one or more claims of the '219 patent and/or actively induced others to infringe one or more claims of the '219 patent, in this district and elsewhere in the United States.

(Dkt. No. 1.) In the present Motion Galaxy moves to dismiss the Complaint's direct, indirect and willful infringement claims under Fed.R.Civ.P. 12(b)(6). (Dkt. No. 8.)

### III. LEGAL STANDARDS

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Motions to dismiss are purely procedural questions to which the Federal Circuit applies the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed.Cir.2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).

When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). A "patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed.Cir.2007). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**\*2** Whether a complaint adequately pleads direct

infringement is to be measured by the specificity required by Form 18. *In re Bill of Lading Transmission and Processing System Patent Litigation,* 681 F.3d 1323, 1331 (Fed.Cir.2012); Fed.R.Civ.P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate"). The Federal Circuit recently reiterated that Form 18 has five requirements:

(1) an allegation of jurisdiction

(2) a statement that plaintiff owns the patent

(3) a statement that defendant has been infringing the patent by "making, selling, and using [the device] embodying the patent"

(4) a statement that the plaintiff has given notice of its infringement; and

(5) a demand for damages

*Bill of Lading,* 681 F.3d at 1334 (citing *McZeal,* 501 F.3d at 1356–57); *see also Patent Harbor LLC v. Dreamworks Animation SKG, Inc.,* 6:11–cv–229 (E.D.Tex. July 27, 2012). To the "extent that *Twombly* and its progeny conflict with Form 18 and suggest different pleading requirements, 'the Forms' control." *Patent Harbor,* 6:11–cv–229 at 6 (citing *In re Bill of Lading,* 361 F.3d at 1331). Form 18 does not apply, however, to indirect infringement claims. *Bill of Lading,* 361 F.3d at 1331. Rather, such claims must be judged by the pleading standards of *Twombly* and *Iqbal. Id.* ("[B]ecause Form 18 addresses only direct infringement, we must look to Supreme Court precedent for guidance regarding the pleading requirements for claims of direct infringement").

## IV. ANALYSIS

### 1. Direct Infringement

Galaxy argues that the Complaint fails to sufficiently plead direct infringement because it does not specifically identify any particular products as infringing the '219 patent. (Dkt. No. 8, at 6.) According to Galaxy, the Complaint's reference to "videos indexed with images that are displayed in windows wherein at least one window displays motion imagery" does not specify a particular product because Galaxy "cannot identify the accused products without first determining how InMotion is construing the '219 patent and whether any of their video products may meet this construction." (Dkt. No. 8. at 6.) Galaxy responds that the level of detail provided in the Complaint is more than sufficient to satisfy the requirement of Form 18. As the recent Federal Circuit

decision in *Bill of Lading* established, the requirements of Form 18, not *Iqbal* and *Twombly,* control whether a Complaint sufficiently pleads an allegation of direct infringement. Form 18's sample complaint for patent infringement recites:

> The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

Fed.R.Civ.P. Form 18 (2007). Here, the Complaint's description of "videos indexed with images" is analogous to the "electric motors" example provided by Form 18 and is therefore sufficient. Accordingly, Galaxy's Motion to Dismiss the Complaint's direct infringement claims is **DENIED.**

### 2. Indirect Infringement

**\*3** Galaxy also contends that the Complaint fails to plead sufficient facts to support a claim for either inducement or contributory infringement. (Dkt. No. 8.) Specifically, Galaxy contends that "there is no charge that Movants sold a non-staple 'component' of a patented machine, that Movants had the requisite knowledge required for contributory infringement liability, or that Movants possessed specific intent to induce infringement." *Id.* Galaxy also argues that the Complaint "fails to allege any facts showing direct infringement by a third party, which is a necessary element of both indirect infringement claims." *Id.*

#### i. *Inducement*

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Liability "requires knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances v. SEB S.A.* —— U.S. ——, ——, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011); *In re Bill of Lading,* 681 F.3d at 1339. To survive a motion to dismiss, a "Complaint must contain sufficient facts plausibly showing that Defendants specifically intended a third party to infringe the [ ] patent and knew the third party's acts constituted infringement." *Patent Harbor,* 6:11–cv–229 at 8. However, this requirement does not mean that the Plaintiff "must prove itself at the pleading stage." *Id.* Failing to allege pre-suit knowledge of the patent "is not a basis to dismiss [Plaintiff's] indirect infringement claims; as it cannot be

disputed that [Plaintiff] *does* sufficiently plead that the Moving Defendants had knowledge of the asserted patent for at least some time during the infringing period." *Lochner Technologies,* 2012 WL 2595288 at *3; *see also Bill of Lading,* 361 F.3d at 1345–46. In this case, there can be no dispute that Galaxy has actual notice of the '219 patent at least as of the time of the filing of this lawsuit. While the Complaint does not explicitly plead facts to show that Galaxy had a specific intent to induce infringement, it is not necessary to provide detailed factual support for each and every element of inducement. *Patent Harbor;* 6:11–cv–229 at 8; *Bill of Lading,* 681 F.3d at 1336. In this case, the Court concludes that InMotion's inducement allegations are sufficient to support an inference that Galaxy is inducing others to infringe its video indexing technology. Accordingly, Galaxy's Motion to Dismiss the Complaint's inducement claim is **DENIED.**

### ii. *Contributory Infringement*

"Contributory infringement occurs if a party sells or otherwise offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party to be 'especially made or especially adapted for use in an infringement of such patent." *Patent* Harbor, 6:11–cv–229 (quoting *Bill of Lading,* 681 F.3d at 1337). To state a claim for contributory infringement, Galaxy must at least (1) identify the "material or apparatus for use in practicing [the] patented process" that is sold or offered for sale by Defendants and (2) plead facts that allow an inference that [these] components ... have no substantial non-infringing uses." *Id.*

**\*4** In this case, the Complaint does not identify the components used in the infringing method, nor does it allege any facts adequate for the Court to find an inference that such components have no substantial non-infringing uses. Therefore, Galaxy's Motion to Dismiss the Complaint's contributory infringement claim is **GRANTED .**

### 3. *Willful Infringement*

Galaxy also asks the Court to dismiss the Complaint's willful infringement claims. To establish a claim for willful infringement, a plaintiff must demonstrate infringement as well as the following additional elements: (1) that there was an objectively high likelihood that the defendant's activities constituted infringement of a valid patent, and (2) either that the defendant subjectively knew of the risk of infringement or that the risk of infringement was so obvious, the defendant should have known of the risk. *See In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007); *see also Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.,* 682 F.3d 1003 (Fed.Cir.2012). At the pleading stage, the Plaintiff must establish a good faith basis for alleging willful infringement. *Seagate,* 497 F.3d 1374.

The Complaint does not allege any particular facts that would demonstrate InMotion's good faith basis for alleging willful infringement. Therefore, Galaxy's Motion to Dismiss the Complaint's willful infringement claim is **GRANTED.** Should factual support for InMotion's willful infringement claims be uncovered during the course of discovery, InMotion is entitled to move the Court for leave to supplement in its Complaint in this regard, at that time.

### V. CONCLUSION

For the reasons discussed above, Galaxy's Motion to dismiss is **GRANTED–IN–PART** and **DENIED–IN– PART.** Additionally, the Court **GRANTS** InMotion leave to amend its Complaint within fourteen days of the date of this Order to comply with Rule 8 as described herein.

**So ORDERED.**

---

          © 2013 Thomson Reuters. No claim to original U.S. Government Works.

 © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# ATTACHMENT 3

2012 WL 1965878
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

LML HOLDINGS, INC., Plaintiff,
v.
PACIFIC COAST DISTRIBUTING INC. et al.,
Defendants.
No. 11–CV–06173 YGR. | May 30, 2012.

**Attorneys and Law Firms**

Marcus H. Yang, Stuart C. Clark, Carr & Ferrell LLP, Menlo Park, CA, for Plaintiff.

Colby Brian Springer, Lewis and Roca LLP, Mountain View, CA, Laura J. Gentilcore, Edward G. Greive, Ray L. Weber, Renner Kenner, Akron, OH, for Defendants.

**Opinion**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANTS TO DISMISS THE SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**

YVONNE GONZALEZ ROGERS, District Judge.

**\*1** Plaintiff LML Holdings, Inc. ("LML") alleges that Defendants Pacific Coast Distributing, Inc. ("Pacific"), PetSmart, Inc. ("PetSmart"), PetSmart Store Support Group, Inc. ("PSSG"), and Coastal Pet Products, Inc. ("Coastal") (collectively "Defendants") have infringed three of its dog harness patents. LML's four count Second Amended Complaint ("SAC") asserts a single claim of direct patent infringement against each of the four Defendants.

Defendants have filed a motion to dismiss on the grounds that LML (1) pleads only speculative, conclusory allegations as to Defendants Pacific and PSSG; (2) fails to identify the accused product; and (3) fails to plead willful infringement.

Having carefully considered the papers submitted, the pleadings in this action, and the argument of counsel, for the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss with leave to amend.

**I. BACKGROUND**

LML is the owner of three patents that claim, among other things, an animal training apparatus for dogs in the form of a harness that incorporates features to enhance the training and control of the animal.[1] SAC ¶ 10. The LML SENS-ible™ product implements the design that is the subject matter of the Patents at Issue. SAC ¶ 14. LML alleges that each Defendant has infringed the Patents at Issue by making, using, importing, distributing, offering for sale, and selling a walking harness that is a knock-off of its SENS-ible™ product, marketed under the name "Top Paw" (the "Top Paw Product"). SAC ¶¶ 12, 27, 32, 36, 40. LML seeks damages, injunctive relief, and costs.

LML additionally alleges that this is an extraordinary case warranting enhanced damages for willful infringement. The SAC alleges that the Defendants directly or indirectly knew about its pending patent applications and infringed the Patents at Issue despite an objectively high likelihood that their actions constituted infringement. Specifically, in December of 2004, an LML affiliate gave notice to PetSmart of the pending patent applications that resulted in the issuance of the Patents at Issue, and also provided PetSmart with a sample of the LML SENS-ible™ product that implemented the inventions that eventually became the Patents at Issue. Moreover, LML alleges that "Pacific, PetSmart and PSSG are affiliated in such a way that the knowledge and conduct attributable to any one of those defendants should also be attributable to each of the others." *Id.* ¶ 24. Despite knowledge of the pending patent applications, each Defendant allegedly has made and/or used and/or imported and/or distributed and/or offered for sale and/or sold, and/or continues to make and/or use and/or import and/or distribute and/or offer for sale, and/or sell, certain products in the United States that infringe on the Patents at Issue. LML further alleges that each Defendant has actual notice of the Patents at Issue through service of the original complaint in December 2011, and despite this notice, each of the Defendants has persisted with its infringing conduct, has refused to cease such infringing conduct, and has continued to defend against this action.

**II. DISCUSSION**

**A. LEGAL STANDARD**

**\*2** A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir.2003). Review is limited to the contents of the complaint, and exhibits attached thereto. *See Hal Roach Studios. Inc. v.*

*Richard Feiner & Co., Inc. ., * 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).* To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legally conclusory statements, not supported by actual factual allegations, are not entitled to the assumption of truth. *Id.* A plaintiff's obligation to provide the grounds of its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

## B. INFRINGEMENT ALLEGATIONS AGAINST DEFENDANTS PACIFIC AND PSSG

Defendants Pacific and PSSG, only, argue that the SAC contains only a speculative, conclusory allegation with respect to their specific conduct relative to three LML patents. The SAC alleges:

> Each of the defendants has made, used, imported, distributed, offered for sale and/or sold, and/or continues to make, use, import, distribute, offer for sale, and/or sell, certain products in the United States that infringe on the Patents at Issue, including but not limited to the Top Paw Product, as alleged in paragraph 13, above. Such infringing use includes, but is not limited to, the importation, distribution and offering for sale and selling the Top Paw Product to, among others, PetSmart.

> SAC ¶¶ 12, 32, and 36.

Defendants argue that these allegations "all but parrot the statute"² and consist of pure speculation based solely on the companies' association with PetSmart. Defs. Br. 3 (citing SAC ¶ 24). LML argues that it believes that both Pacific and PSSG have infringed its products by making, using, importing, distributing, offering for sale, selling and on this basis it has alleged that both Defendants engaged in such infringing conduct.

The inquiry here, however, is whether the facts alleged, if proven, would establish the Defendants' liability for infringement and not whether the Defendants have an adequate basis to allege these facts. Whether it is doubtful or even unlikely that each of the four Defendants makes, uses, imports, distributes, and sells the accused product(s), this does not render the allegations implausible. *See Iqbal, supra,* 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citing *Twombly, supra,* 550 U.S. at 556). Rather, here, the allegations focus on the Defendants' role in multiple parts of the supply and distribution chain. These allegations sufficiently put these Defendants on notice of their alleged role and are adequate under federal pleading standards. Based on the foregoing analysis, the Motion to Dismiss Counts II and III of the SAC is **DENIED.**

## C. THE ACCUSED PRODUCT OR PRODUCTS

**\*3** Next, Defendants argue that they have not been put on notice of the accused product or products because (1) there is no picture, packaging, or model number identified in the SAC; and (2) there are multiple products marketed under the name "Top Paw." The SAC alleges that LML provided Defendants with these particulars concerning the accused product(s) on December 17, 2012. SAC ¶ 17.³ Additionally, the SAC alleges how the Top Paw Product implements the elements of each claim of the Patents at Issue so as to infringe the patents.

According to Defendants, because "Top Paw" is a brand, the SAC alleges infringement by nothing more than a brand. Mot. 3–4. Based upon the allegations in the SAC, the Court understands there is only one Top Paw Product. *See* SAC ¶ 12 (describing the accused products as "certain products ... including, but not limited to a walking harness product that is marketed under the name 'Top Paw' "). The Court requested clarification on this point at oral argument; counsel agreed that there is only one "Top Paw Product," but that it has different sizes. Plaintiff's counsel further clarified that currently LML is aware of only one product—the Top Paw Product—that it believes infringes on the Patents in Issue.⁴ If LML chooses to file a Third Amended Complaint, it should clarify which product(s) it believes infringes on the Patents at Issue and accuse only that product. However, the inquiry here is whether the facts alleged state a cause of action for infringement.

Based on the foregoing analysis, this ground for dismissal of LML's claims for patent infringement is **DENIED.**

## D. WILLFUL INFRINGEMENT

Defendants challenge the claim for willful infringement on the grounds that LML has not identified: (1) "pre-filing" knowledge of the Patents at Issue; or (2) post-filing conduct that would support a finding of willful infringement. LML disagrees and argues that the SAC

adequately alleges that Defendants' infringement has been willful and with full knowledge of the Patents at Issue making this an exceptional case pursuant to 35 U.S.C. § 284.

Section 284 permits a court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Federal Circuit has held that a finding of willful infringement is a prerequisite to the award of enhanced damages under Section 284. *See in re Seagate Technology, LLC,* 497 F.3d 1360, 1368 (Fed.Cir.2007) (*en banc*). Willfulness requires that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. "[T]his objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer." *Id.* Thus, to state a claim for willful infringement here, LML must allege facts from which it may be concluded that the Defendants knew of the Patents at Issue or it was so obvious that it should have been known, and there was an objectively high likelihood that their actions constituted infringement of a valid patent. *Id.; State Industries, Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed.Cir.1985).

### 1. Knowledge of patent applications versus the patents themselves.

**\*4** The issue here is whether alleging knowledge of a pending patent application is sufficient to state a claim for willfulness.

The SAC alleges that "[i]n December, 2004 LML affiliate corporation Softouch Concepts, Inc. ('Softouch') gave written notice to PetSmart of the pendency of patent applications numbers 60/392,746 and 10/341,930 that resulted in the issuance of the Patents at Issue." Defendants argue that under *Seagate,* willfulness requires that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a *valid* patent," but knowledge of patent application fails to allege "pre-filing" knowledge of a valid patent. LML counters that the allegations of willfulness may be based solely upon knowledge that a patent application was filed.

District Courts have regularly required that plaintiffs plead knowledge of the actual patents at issue and not mere knowledge of the pendency of patent applications. *E.g., IpVenture, Inc. v. Cello Partnership,* No. 10–CV–04755–JSW, 2011 WL 207978, at *2 (N.D.Cal. Jan.21, 2011) (dismissing claim for willful infringement where complaint provided "no facts to support the claim that defendants actually had knowledge of the issued patent.").[5] This is because "[a] 'patent pending' notice

gives one no knowledge whatsoever .... Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable." *A.O. Smith Corp., supra,* 751 F.2d at 1236.

Here, LML does not allege that Defendants knew the patents issued because they conducted a search of whether the patents issued, but rather, LML alleges that the Defendants acted recklessly or objectively unreasonably because they did not conduct a search. According to LML, PetSmart was on notice of pending patent applications (and attributes this knowledge to Pacific and PSSG) and therefore, PetSmart, Pacific, and PSSG needed to inquire into whether those patent applications were granted. Thus, LML argues, the facts alleged show the risk of infringement was "so obvious that it should have been known to the accused infringer," and therefore, Defendants' infringement was willful because they engaged in infringing acts despite this objectively high likelihood that their actions constituted infringement. Pl.'s Opp'n 8 (quoting *Seagate, supra,* at 1373). LML does not cite any law to support its proposition that it is objectively unreasonable for a company to learn of a patent application and not conduct a search of whether the patent issued.[6] Nor has LML explained how knowledge of a patent application creates an objectively high likelihood that the accused infringer's subsequent actions constitute infringement of a valid patent. It simply argues that a reasonable jury could conclude that Defendants acted unreasonably. Mere knowledge of patent applications, without more, does not allege an objectively high likelihood that Defendants' actions constitute infringement of a valid patent.

**\*5** Based on the foregoing analysis, the Court concludes that LML has not adequately pled a claim for willful infringement based on pre-filing conduct.

### 2. Willfulness based on conduct post-filing of the complaint.

The final issue is whether LML can seek enhanced damages based upon the Defendants' post-filing conduct. A preliminary injunction generally provides an adequate remedy to combat an accused infringer's post-filing willful infringement. *Seagate, supra,* 497 F.3d at 1372. "A patentee who does not attempt to stop an accused infringer's activities [by moving for a preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id.; see Anascape, supra,* 2008 WL 7182476 (patentee who did not move for preliminary injunction

was not entitled to benefit from its lack of diligence by obtaining enhanced damages for willfulness during the post-filing period).

Circumstances where an infringer's post-filing conduct was found to be willful involved some material change that could create an objectively high likelihood of infringing a valid patent, such as a patent surviving a reexamination proceeding without narrowed claims. *See St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.,* 2009 WL 1649751, at *1 (D.Del. Jun.10, 2009) (cited in *Webmap Technologies, LLC v. Google, Inc.,* 2010 WL 3768097, at *2, 3 (E.D.Tex. Sep.10, 2010). Otherwise, the accused infringer must have pre-filing knowledge of the patents at issue before the patentee can accrue enhanced damages based on post-filing willful conduct. *Id.* at *1–2.

Here, the circumstance that LML identifies to substantiate a willfulness claim is the litigation itself, including service of the initial complaint, amendment of the complaint, and Defendants' filing of a Rule 12(b)(6) motion to dismiss. In essence, LML alleges that Defendants' decision to defend this case on the merits demonstrates willfulness. LML also quotes *dicta* in *Seagate,* and argues that although "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct," the phrase "in ordinary circumstances" demonstrates that depending on the circumstances, an infringer's post-filing conduct alone may constitute willfulness. Pl.'s Opp'n 10.[7] Moreover, LML argues that there is no *per se* rule that post-filing notification of the patent at issue cannot form the basis for a finding of willfulness. Thus, LML argues it is not precluded from relying solely upon post-filing conduct to support its allegations of willfulness. Although technically a party may not be *precluded* from relying solely upon post-filing conduct to support a claim of willfulness, LML has failed to allege facts that distinguish this case from the ordinary case where "willfulness will depend on an infringer's prelitigation conduct."

LML cannot cite a single case in which the fact that a suit was filed was grounds for a finding that an infringer's post-filing conduct alone of willfulness. Instead, LML cites *Ralston Purina Co. v. Far–Mar–Co, Inc.,* 772 F.2d 1570, 1577 (Fed.Cir.1985) (infringer's pre-filing infringement was willful where patentee offered a license, infringer immediately declined the license, and patentee then filed suit approximately 60 days after infringer refused to take a license), for the proposition that there is no minimum time-period for enhanced damages to accrue. The case is not on point. In *Ralston Purina,* the infringer had actual notice of the patent before the lawsuit was filed and it was the defendant's pre-filing conduct that was

found to be willful.

**\*6** Knowledge of the Patents at Issue from service of the initial complaint does not warrant imposition of enhanced damages for willful conduct based solely upon post-filing conduct. LML suggests that since it amended its complaint subsequent to serving the original complaint, Defendants have been on notice that they are infringing the Patents at Issue, and because they continue to infringe on the Patents at Issue, the infringement is willful. However, the SAC also alleges that Defendants investigated the allegations of infringement in LML's complaint and concluded that the Patents at Issue are invalid. SAC ¶¶ 21, 23. Defendants argue that LML may disagree with their conclusion that Patents at Issue are invalid, but this does not plausibly allege "an objectively high likelihood that [Defendants'] actions constitute [ ] infringement of a valid patent." *Seagate, supra,* 497 F.3d at 1371. The Court agrees.

Without more, willfulness cannot be based exclusively on the accused infringers' post-filing conduct in this case. If discovery uncovers facts that would give rise to allegations of willful infringement, then LML may seek to amend its complaint. However, LML has not adequately pled a claim for willful infringement based on post-filing conduct.

Based on the foregoing analysis, the Court concludes that LML fails to adequately plead a claim for willful infringement. Therefore, the Court **GRANTS** the motion to dismiss the claim for willful infringement.

### III. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND.**

No later than June 20, 2012, LML shall file either (i) a Third Amended Complaint; or (ii) a statement that it will not file a Third Amended Complaint.

Defendants' response(s) will be due 21 days after LML files one of the above.

This Order Terminates Docket Number 24.

**IT IS SO ORDERED.**

Footnotes

[1]     Specifically, U.S. Patent Nos. 7,886,699, 7,387,087, and 7,107,939 (jointly called the "Patents at Issue").

[2]     The statute provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271.

[3]     Specifically, "[o]n December 16, 2012 counsel for Pacific, PetSmart and PSSG asked counsel for LML to provide particulars of the accused Top Paw Product to him, and the following day counsel for LML provided a copy of the packaging of the Top Paw Product that included a diagram depicting the infringement by the Top Paw Product in the respects described in" the Complaint. SAC ¶ 17.

[4]     Apparently the confusion stemmed from the allegation that "certain products" infringed on the Patents at Issue but the SAC identified only the Top Paw Product as infringing. After Plaintiff's counsel clarified that LML is accusing only this one product of infringement, Defendants' counsel stated that, if there is only one accused product, Defendants can answer the SAC.

[5]     See also, Sealant Systems Int'l, Inc. v. TEK Global, 11–CV–00774–PSG, 2012 WL 13662, at *3 (N.D.Cal. Jan.4, 2012) (judgment on the pleadings); Solannex, Inc. v. MiaSole, No. 11–CV–00171–PSG, 2011 WL 4021558, at *3–4 (N.D.Cal. Sep. 9, 2011) ("[w]hat Solannex fails to allege in the second amended complaint, however, is that MiaSole had any pre-suit knowledge of the [patent-in-suit] or that its conduct rises to the level of 'objective recklessness' required to support an allegation of willful infringement"); Bell Helicopter Textron, Inc. v. American Eurocopter, LLC, 2010 WL 1946336, at *8 (N.D.Tex. May 12, 2010), Webmap Techs., LLC v. Google, Inc., 2010 WL 3768097, at *4 (E.D.Tex. Sep.10, 2010) (dismissing claim of willful infringement based solely on defendant's post-filing knowledge of the accused patent and failure to abate its alleged infringement); Anascape, Ltd. v. Microsoft Corp., 2008 WL 7182476 (E.D.Tex. Apr.25, 2008), rev'd on other grounds, Anascape, Ltd. v. Nintendo of Am., Inc., 601 F.3d 1333 (Fed.Cir.2010) (pre-filing knowledge of a patent application did not create a triable issue of fact on the issue of pre-filing willful infringement).

[6]     Instead, LML attempts to distinguish Defendants' cases. It argues that Ip Venture v. Celloco Partnership, supra, and Bell Helicopter Textron v. American Eurocopter, supra, involved bare and conclusory allegations of willful infringement. LML distinguishes Solannex v. Miasole, supra, on the basis that the court dismissed the action because the complaint failed to allege that the defendant had pre-suit knowledge of the patent "or that its conduct rises to the level of 'objective recklessness' required to support an allegation of willful infringement." Pl.'s Opp'n 9–10.

[7]     The passage provides more fully that:
        ... in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct ... [W]hen a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement.
        Seagate, supra, 497 F.3d at 1372.

---

**End of Document**                                        © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# ATTACHMENT 4

2013 WL 2950342
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

REMBRANDT SOCIAL MEDIA, LP, Plaintiff,
v.
FACEBOOK, INC., et al., Defendants.
Case No. 1:13cv158. | June 12, 2013.

**Synopsis**
**Background:** Owner of patent describing invention that
allows persons to create a personal diary on the World
Wide Web wherein users are able to create a collection of
personal information and third party content that is
displayed on a personal webpage that can be shared with
an authorized group of people and patent describing
system that permits users to transfer third party content
automatically from a third party content provider's
website to the user's personal diary brought infringement
action against operators of social networking websites,
alleging direct, indirect, and willful infringement of
patents. Website operators moved to dismiss.

**Holdings:** The District Court, T.S. Ellis, III, J., held that:

[1] patent owner failed to state claim for indirect
infringement based upon pre-suit knowledge;

[2] patent owner failed to adequately plead pre-suit
knowledge for willful infringement; and

[3] patent owner alleged sufficient facts to state claim for
direct infringement.

Motion granted in part and denied in part.

West Headnotes (10)

[1] **Patents**
👉 Damages

However the putative infringer learns of the
allegedly infringed patent, damages related to
indirect infringement accrue only once the
putative infringer learns of the patent.

[2] **Patents**
👉 Infringement and Injury, Loss or Damage

Owner of patent describing invention that allows
persons to create a personal diary on the World
Wide Web, wherein users are able to create a
collection of personal information and third
party content that is displayed on a personal
webpage that can be shared with an authorized
group of people, and patent describing system
that permits users to transfer third party content
automatically from a third party content
provider's website to the user's personal diary
failed to plead any facts that made it plausible,
rather than merely conceivable, that social
networking website owner had knowledge of
either patent in issue prior to filing of
infringement suit, and thus failed to state claim
for indirect infringement based upon pre-suit
knowledge, although parties allegedly shared
law firm, and patent purchased by website
owner cited patent at issue as prior art. 35
U.S.C.A. § 271(b, c).

[3] **Patents**
👉 Right to Increase Damages Awarded

Enhancement of damages must be premised on
willful infringement.

[4] **Patents**
👉 Right to Increase Damages Awarded

Because increased damages are punitive, the
requisite conduct for imposing them must
include some degree of culpability and an act of
willful infringement satisfies this culpability
requirement.

[5] **Patents**

Rembrandt Social Media, LP v. Facebook, Inc., --- F.Supp.2d ---- (2013)

Intent or Purpose, and Knowledge
**Patents**
Participation, Intent, and Contributory
Infringement

A plaintiff alleging willful infringement must
establish that by clear and convincing evidence
the infringer acted despite an objectively high
likelihood that its actions constituted
infringement of a valid patent, and that this
objectively-defined risk was either known or so
obvious that it should have been known to the
accused infringer.

[6]  **Patents**
Grounds in General

A patent infringement plaintiff's proper remedy
for reckless post filing conduct is to seek a
preliminary injunction, and a decision to grant
or deny a preliminary injunction is based on the
district court's consideration of four factors: (1)
the likelihood of the patentee's success on the
merits, (2) irreparable harm if the injunction is
not granted, (3) the balance of hardships
between the parties, and (4) the public interest.

[7]  **Patents**
Infringement and Injury, Loss or Damage

Patent owner failed to adequately plead pre-suit
knowledge for willful infringement, as required
for enhancement of damages, where patent
owner failed to plead any facts that made it
plausible, rather than merely conceivable, that
social networking website owner had knowledge
of either patent in issue prior to the filing of this
suit. 35 U.S.C.A. § 284.

[8]  **Patents**
Infringement and Injury, Loss or Damage

Patent owner alleged sufficient facts to state
claim against social networking website
operators for direct infringement of patent

describing system that permits users to transfer
third party content automatically from a third
party content provider's website to the user's
personal diary; complaint alleged that website
operators placed into use each element of system
in patent or combined to use each element of the
system, alleged that social networking website
used system wherein website transferred content
specified by website's members to website's
servers, that accused system placed into use all
three elements of patented system, and that
website operator derived benefit from its use of
system because it used collected information to
provide content for website's social network,
and to generate targeted advertising to members.
35 U.S.C.A. § 271(a).

[9]  **Patents**
Infringement and Injury, Loss or Damage

Patent owner adequately alleged that operator of
social networking website directly infringed
claim in patent describing system that permits
users to transfer third party content
automatically from a third party content
provider's website to the user's personal diary
by making system; complaint alleged that
operator made system by combining all of the
claim elements for website's accused system. 35
U.S.C.A. § 271(a).

[10]  **Patents**
Original Utility

6,289,362, 6,415,316, 7,933,893. Cited.

**Attorneys and Law Firms**

Ahmed Jamal Davis, Daniel Robert Gopenko, Richard
Alex Sterba, Ruffin B. Cordell, Fish & Richardson,
Washington, DC, for Plaintiff.

Stephen Richard Smith, Jonathan Garwood Graves,
Phillip Edward Morton, Christopher Charles Campbell,
Stephen Crawford Crenshaw, Stephen Patrick McBride,
Cooley LLP, Reston, VA, for Defendants.

**Opinion**

*MEMORANDUM OPINION*

T.S. ELLIS, III, District Judge.

**\*1** In this patent infringement suit, defendants seek threshold dismissal, arguing (i) that there is no indirect or willful infringement, as defendants lacked the requisite pre-suit knowledge of the patents in issue, and (ii) that because of the nature of the ′362 patent's claimed system, only the end computer user—here the consumer—can directly infringe this system claim. Plaintiff opposes this motion, arguing (i) that defendants had the requisite pre-suit knowledge of the patents in issue and, even if they did not, post-suit knowledge satisfies the knowledge requirement for willful and indirect infringement of the patents, and (ii) that defendants directly infringe the system claim by controlling each step of the system, including the first step. Accordingly, the motion to dismiss presents the following questions:

(i) Whether the pre-suit knowledge required for indirect and willful infringement is satisfied as a pleading matter, where, as here, (a) the patentee and the putative infringer used the same law firm, (b) the putative infringer was sued on a patent that cited the patent in issue as prior art, and (c) the putative infringer purchased a patent that cited the patent in issue as prior art;

(ii) Whether knowledge of the patents derived from the service or filing of the lawsuit provides the knowledge of the patents required for either indirect or willful patent infringement claims; and,

(iii) Whether the facts pled in the complaint are sufficient, if proved, to establish direct infringement of the system claim in issue.

For the reasons that follow, the motion to dismiss must be granted in part and denied in part, as follows:

(i) The complaint fails to allege sufficient facts concerning pre-suit knowledge to state a claim for indirect infringement that is plausible on its face;

(ii) The complaint adequately alleges sufficient facts concerning post-filing knowledge to state a claim for indirect infringement, as the service or filing of a law suit provides the knowledge of the patents required for indirect infringement with damages limited to the post-filing period;

(iii) The complaint fails to allege sufficient facts

concerning pre-suit knowledge of the patents to state a claim for willful infringement that is plausible on its face, and willful infringement cannot be based solely on knowledge that arises from the service or filing of the lawsuit; and,

(iv) The complaint adequately alleges sufficient facts to establish that defendants directly infringe the system claim in the ′362 patent.

**I.**[1]

**A.**

Plaintiff Rembrandt Social Media. LP ("Rembrandt"), a Virginia limited partnership with a principal place of business in Bala Cynwyd, Pennsylvania, brings this patent infringement suit against defendants Facebook. Inc. ("Facebook") and AddThis, Inc. ("AddThis"). Facebook is a Delaware Corporation with a principal place of business in Menlo Park, California and AddThis is a Delaware Corporation with a principal place of business in Vienna, Virginia.

**\*2** Rembrandt is the owner of the two patents in issue. U.S. Patent No. 6,415,316 (the ′316 Patent), entitled "Method and Apparatus for Implementing a Web Page Diary," describes an invention that allows persons to create a personal diary on the World Wide Web wherein users are able to create a collection of personal information and third party content that is displayed on a personal webpage that can be shared with an authorized group of people. U.S. Patent No. 6,289,362 (the ′362 Patent), entitled "System and Method for Generation. Transferring, and Using an Annotated Universal Address." describes a system that permits users to transfer third party content automatically from a third party content provider's website to the user's personal diary.

The claim at issue in this motion to dismiss is claim 7 of the ′362 patent. Claim 7 is a "system" claim,[2] which provides as follows:

A computer system comprising:

third party memory storing a transfer script that generates a request for a transfer applet from server memory;

server memory storing an AUA [annotated universal address] database from which personalized web pages are construed and a transfer applet for establishing a communications link between a client browser and the server memory; and

a client browser coupled to the third party memory and to the server memory for executing the transfer script and the transfer applet to transfer an AUA to an AUA database stored in the server memory, the AUA identifying a location of a content object and including an annotation authored by a content provider for controlling an aspect of a presentation of the object.

ʹ362 Patent, Claim 7.

The ʹ316 patent issued on July 2, 2002 and the ʹ362 patent issued on September 11, 2001 to inventor Joannes Jozef Everardus Van Der Meer ("Van Der Meer"). Van Der Meer assigned his patents to his company, Aldministrator Nederland B.V. ("Aduna"), and following Van Der Meer's death in June 2004, his family assigned the patents to Rembrandt, a non-practicing entity.

Rembrandt now brings this suit against Facebook and AddThis, alleging that (i) Facebook has willfully directly and indirectly infringed the ʹ316 patent, (ii) Facebook and AddThis have jointly and willfully, directly and indirectly infringed the ʹ362 patent, and (iii) Facebook has willfully directly and indirectly infringed the ʹ362 patent. More specifically, Rembrandt alleges that Facebook directly infringes the ʹ316 patent by operating the www.facebook.com website, and indirectly infringes the ʹ316 patent by inducing and contributing to infringement of the ʹ316 patent by encouraging Facebook members to use what Rembrandt alleges is the 'web-based diary feature' of the www.facebook.com website. In addition, Rembrandt alleges that AddThis directly infringes the ʹ362 patent by both making and using the system described in claim 7. Likewise, Rembrandt alleges that Facebook directly infringes the ʹ362 patent by using the system described in claim 7.

**\*3** In support of its indirect and willful infringement claims, Rembrandt alleges that Facebook had prior knowledge of the ʹ316 and ʹ362 patents from four separate sources. First, Rembrandt alleges that Aduna hired the law firm Fenwick & West to prosecute and maintain the ʹ316 and ʹ362 patents. Aduna maintained this relationship through July 2012. From 2008 until 2012, Fenwick & West also represented Facebook in patent prosecutions. Thus, Rembrandt alleges that it is plausible that a Fenwick & West attorney informed Facebook about the ʹ316 and ʹ362 patents. Second, Rembrandt alleges that on May 20.2011, Facebook was served with a complaint alleging infringement of U.S. Patent No. 7,933,893, which cited the ʹ362 patent as prior art. Third, Rembrandt alleges that in June 2012, Facebook acquired two patents that listed the ʹ362 patent as prior art. Finally, Rembrandt argues that the original complaint in the instant case provides defendants with the requisite knowledge of the

ʹ316 and ʹ362 patents for both indirect and willful infringement.

Defendants now seek threshold dismissal, claiming that the indirect infringement claims must be dismissed as Rembrandt has not adequately pled pre-suit knowledge and that post-suit knowledge is insufficient to satisfy the knowledge requirement for an indirect infringement claim. Defendants also argue that for the same reasons, Rembrandt's claim for willful infringement must fail. Finally, defendants argue that the claim for direct infringement of claim 7 of the ʹ362 patent must be dismissed as the only possible direct infringer is the consumer of defendants' services.

## II.

It is axiomatic that dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P., is required where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought. If the complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to relief, then the motion to dismiss must be granted.

## III.

A party may indirectly infringe a patent either (i) by inducing direct infringement, in violation of 35 U.S.C. § 271(b), or (ii) by contributing to direct infringement, in violation of 35 U.S.C. § 271(c). Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer," and § 271(c) provides, in pertinent part, that:

> Whoever offers to sell or sells within the United States ... a component of a patented ... apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or

commodity of commerce suitable
for substantial noninfringing use,
shall be liable as a contributory
infringer.

**\*4** The Supreme Court has made clear that "§ 271(c)
requires knowledge of the existence of the patent that is
infringed" and "that the same knowledge is needed for
induced infringement under § 271(b)." *Global–Tech
Appliances, Inc. v. SEB S.A.,* ––– U.S. ––––, 131 S.Ct.
2060, 2068, 179 L.Ed.2d 1167 (2011). In *Global–Tech,*
the Supreme Court explained that the knowledge
requirement under § 271(c), as elucidated in *Aro
Manufacturing Co. v. Convertible Top Replacement Co.,*
377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), "has
become a fixture in the law of contributory infringement
[.]" *Global–Tech,* 131 S.Ct. at 2068 (quoting 5 R. Moy,
Walker on Patents § 15:20, p. 15–131 (4th ed. 2009)).
Accordingly, because § 271(b) shares a common origin
"in the pre–1952 understanding of contributory
infringement, ... [i]t would thus be strange to hold that
knowledge of the relevant patent is needed under § 271(c)
but not under § 271(b)." *Id.* Thus, both forms of indirect
infringement—contributory infringement and inducement
of infringement—require the putative infringer to know
"of the existence of the patent that is infringed." *Id.*

Although the knowledge requirement for indirect
infringement is now settled law under § 271(b) and (c),
there is disagreement among the district courts as to
whether post-suit knowledge may satisfy this knowledge
requirement. On the one hand, a majority of district courts
considering this issue have held that post-suit knowledge
(i.e., knowledge provided by the filing of the lawsuit)
satisfies the knowledge element for indirect
infringement;[3] while on the other hand, a minority of
district courts have held that post-suit knowledge does not
satisfy the required knowledge element for indirect
infringement.[4] The majority view bases the adequacy of
post-suit knowledge on there being no sound reason that a
defendant should avoid liability for an indirect
infringement claim when it continues "to promote
infringing uses of their products after learning about the
patents," simply "because it happened to learn of the
patent in connection with a lawsuit." *Intellect Wireless
Inc.,* 2012 WL 787051, \*11. The minority view courts
take the position that permitting plaintiffs to plead post-
suit knowledge requires courts "to bootstrap the
knowledge Defendants *now* have based on Plaintiffs filing
of the Complaint onto defendant's acts *before* [the filing
of the complaint.]" *Proxyconn Inc.,* 2012 WL 1835680,
\*5. Further, those courts also suggest that requiring
plaintiffs to plead pre-suit knowledge "furthers judicial
economy and preserves parties' resources by encouraging
resolution prior to filing a lawsuit." *Id.*

It is clear that the majority view is the sounder view. There
is simply no substantive difference between (i) a
putative infringer learning of a patent from a plaintiff's
letter a day, or hours or even minutes before an
infringement suit is filed or served, and (ii) a putative
infringer learning of the patent from the filing or service
of a complaint. In both instances, the putative infringer
learns of the existence of the patent and for purposes of
satisfying the knowledge required to establish indirect
infringement, it is immaterial how the putative infringer
gains this knowledge. What matters is not how the
putative infringer learned of the patents—by a letter from
plaintiff prior to the filing of suit, by service of the
complaint, or indeed from any source—but simply that
the putative infringer has knowledge of the allegedly
infringed patent and its claims; it is this knowledge of the
patent and its claims by a putative infringer—however
obtained—that is essential to a claim for indirect
infringement. The filing and service of an infringement
suit is merely one way of establishing this essential
element of the indirect infringement claim.

**\*5** [1] But there is an important consequence of relying on
the filing and service of the infringement suit to satisfy
the knowledge requirement to establish indirect
infringement: Plaintiff may only recover damages for
indirect infringement for the period of time that
commences once the putative infringer learns of the
patent.[5] Thus, however the putative infringer learns of the
allegedly infringed patent, infringement damages accrue
only once the putative infringer learns of the patent.

[2] Defendants argue that the pleading of post-filing
knowledge fails to satisfy Rule 8, Fed.R.Civ.P. In
essence, defendants argue that plaintiff cannot adequately
allege the knowledge element of an indirect infringement
claim if knowledge of the patent only arises post-suit. *See,
e.g.,* *Brandywine Comms.,* 904 F.Supp.2d at 1268–69
("finding that a complaint provides sufficient knowledge
for induced infringement would vitiate the Supreme
Court's holding ... that an allegation of knowledge of the
patent is required to state a claim for induced
infringement").

This argument is not persuasive. First, it is clear that if a
putative infringer continues to engage in indirect
infringement of a patent after the filing of the suit, then a
plaintiff may recover damages for that continued indirect
infringement. Second, even if such an initial complaint
fails to plead knowledge adequately, the appropriate relief
would be dismissal without prejudice. The patentee could
then file, as here, an amended complaint that alleges
indirect infringement with notice of the patent in issue

based on the filing of the original complaint.[6] Thus, there is no sound basis for precluding a plaintiff from alleging the requisite knowledge for indirect infringement on the basis of the filing of the lawsuit. But in that instance, of course, damages would be limited to the post-filing period.

Although the amended complaint adequately alleges indirect infringement beginning with the service of the complaint, plaintiff here claims much more. Specifically, plaintiff claims that defendants' knowledge of the '362 patent may be appropriately inferred from three sources: (i) Facebook and the predecessor-in-interest of the '362 patent shared the same law firm, (ii) Facebook purchased a patent that cited the '362 patent as prior art, and (iii) Facebook was served with a lawsuit over a patent that cited the '362 patent as prior art. Yet, none of these facts gives rise to anything more than a conceivable possibility of knowledge of the '362 patent, rather than a plausible inference that Facebook possessed such knowledge. To begin with, the fact that Facebook and the '362 patent's predecessor-in-interest shared the same law firm is not, without more, sufficient for pleading knowledge under *Iqbal/Twombly.* Rembrandt has not even alleged that the same lawyers in that law firm worked on matters for both patents, and moreover, the prosecution of the '362 patent was completed years before Facebook allegedly hired that law firm. Thus, without more, the fact that the two parties shared a law firm at some point in the past falls far short of raising a plausible inference of pre-suit knowledge of the '362 patent, or indeed either patent. Similarly, the fact that a patent purchased by Facebook cites the '362 patent as prior art is not enough, by itself, to establish that Facebook had the requisite pre-suit knowledge of the '362 patent. Significantly, Facebook did not even prosecute the application for the patent that cites the '362 patent as prior art; instead, Facebook purchased that patent from America Online, Inc. Thus, the mere allegation that a patent purchased by Facebook cites the '362 patent as prior art makes it, at best, only conceivable, not plausible, that Facebook might have learned of the '362 patent in the course of purchasing a patent. Finally, the fact that Facebook was sued on a patent that cited the ' 362 patent falls far short of warranting a plausible inference of pre-suit knowledge of the '362 patent; indeed, it appears that the lawsuit referred to was voluntarily dismissed prior to Facebook filing an answer. In sum, Rembrandt has failed to plead any facts that make it plausible, rather than merely conceivable, that Facebook had knowledge of either patent in issue prior to the filing of this suit. Accordingly, the claims for indirect infringement based upon pre-suit knowledge must be dismissed.

## IV.

**\*6** [3] [4] [5] It is well-settled "that enhancement of damages must be premised on willful infringement[.]" *Beatrice Foods Co. v. New England Printing & Lithographing Co.,* 923 F.2d 1576, 1578 (Fed.Cir.1991). Because "increased damages are punitive, the requisite conduct for imposing them must include some degree of culpability" and an "act of willful infringement satisfies this culpability requirement[.]' " *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996). Thus, a plaintiff alleging willful infringement must therefore establish (i) that "by clear and convincing evidence ... the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (ii) that "this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007).[7]

[6] Importantly, the Federal Circuit has made clear that "in ordinary circumstances, willfulness will depend on an infringer's pretigation conduct." *Id.* at 1374. Accordingly, "a patentee must have a good faith basis for alleging willful infringement ..., [s]o a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.* Thus, Federal Circuit authority makes clear that an allegation of willful infringement must depend upon pre-suit knowledge of the patent in issue. To conclude otherwise would lead to the anomalous result that every lawsuit alleging infringement could include a willful infringement claim based on simply the filing or the serving of the complaint. This anomalous result is neither sensible nor intended by the statutory patent damages provision, 35 U.S.C. § 284.[8] Not surprisingly, the parties cite no case, and none has been found, in which post-suit knowledge was held sufficient to support a claim for willful infringement.[9]

[7] A close examination of the amended complaint at issue makes clear that Rembrandt has not adequately pled pre-suit knowledge for willful infringement. As noted above, Rembrandt has failed to allege any facts that would support a plausible inference that defendants had pre-suit knowledge of the patents in issue. At most, Rembrandt has pled various facts that make it conceivable that Facebook might have learned about the patents in issue, but Rembrandt has not pled sufficient facts to invite the plausible inference that Facebook had the requisite pre-suit knowledge of either patent. Accordingly, the claims for willful infringement must be dismissed.

**V.**

Analysis next proceeds to defendants' argument that plaintiff's allegation of direct infringement of claim 7—the system claim—fails because the system is used and made by the end user—the consumer—not defendants.

The Federal Circuit recently made clear that "to 'use' a system for purposes of infringement [of a system claim], a party must put the invention into service, *i.e.,* control the system as a whole and obtain benefit from it." *Centillion Data Systems, LLC v. Qwest Comms. Int'l, Inc.,* 631 F.3d 1279, 1284 (Fed.Cir.2011). Importantly, this does not mean that a party must exercise direct control over each individual element of the system; instead, "direct infringement by 'use' of a system claim 'requires a party ... to use each and every ... element of a claimed [system].' " *Id.* (quoting *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1317 (Fed.Cir.2005)) (alterations in original). Similarly, in order to "make" a system under § 271(a), a putative infringer must "combine all of the claim elements[.]" *Id.* at 1288.

**\*7** *Centillion* is the latest circuit pronouncement concerning infringement of a system claim, and carefully read, this decision points persuasively to the correct result here. In *Centillion,* the claim in issue was a system claim consisting of the following four elements: (1) "storage means for storing transaction records," (2) "data processing means for generating summary reports as specified by a user from the transaction records," (3) "transferring means for transferring the transaction records and summary reports to a user," and (4) "personal computer data processing means adapted to perform additional processing on the transaction records." *Centillion,* 631 F.3d at 1281. The first three elements, termed the 'back end' system, were maintained by the service provider, while the last element, termed the 'front end' system, was maintained by the end user. *Id.* On these facts, the Federal Circuit on summary judgment held that Qwest's customers "used" the system in issue by engaging the "on-demand function where a customer 'seeks particular and specified information' by creating a query that the Qwest back-end system processes and provides a result for download [.]" *Id.* at 1285. In the Federal Circuit's words,

> The customer controls the system by creating a query and transmitting it to Qwest's back-end. The customer controls the system on a one request/one response basis. This query causes the back-end processing to act for its intended purpose to run a query and

return a result. The user may then download the result and perform additional processing as required by the claim. If the user did not make the request, then the back-end processing would not be put into service.

*Id.* Thus, by "causing the system as a whole to perform this processing and obtaining the benefit of the result, the customer has 'used' the system under § 271(a)." *Id.* The Federal Circuit further explained that "it makes no difference that the back-end processing is physically possessed by Qwest." *Id.* Likewise, the Federal Circuit also noted that the customers use the system when they subscribed to the service because in both modes of operation "it is the customer initiated demand for the service [that] causes the back-end system to generate the requisite reports." *Id.* Accordingly, the Federal Circuit concluded that but for the customer's actions, "the entire system would never have been put into service." *Id.* The Federal Circuit further concluded that unlike the customers, Qwest did not, as a matter of law, "use" the system in issue. Although Qwest made the

> back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means. Supplying the software for the customer to use is not the same as using the system.

*Id.* In other words, Centillion's use infringement claim failed because Qwest only used three of the four elements of the system claim: only the customer used the fourth element.

**\*8** Similarly, the Federal Circuit held that Qwest did not "make" the system as a matter of law, because Qwest does not combine all of the claim elements; instead, the "customer, not Qwest, completes the system by providing the 'personal computer data processing means' and installing the client software." *Id.* at 1288. Distilled to its essence, then, *Centillion* teaches that an infringer may use a system (i) by causing the system to perform the whole process and obtaining a benefit, or (ii) by placing into use each element of the claimed system. *See id.*

[8] Given this, it follows that a result different from *Centillion* must obtain here because the complaint alleges that defendants (i) place into use each element of the system or (ii) combine to use each element of the system. More specifically, Rembrandt alleges that Facebook uses the claim 7 system through its Facebook Transfer System,

wherein Facebook transfers content specified by Facebook members to Facebook's servers. Rembrandt alleges that the Facebook Transfer System places into use all three elements of the claim 7 system. In particular, Rembrandt alleges that the Facebook Transfer System consists of

> (i) "Third-party content-provider webserver memory that stores the Facebook Transfer Applet that transfers data that has been 'like' or 'shared' by a Facebook member from the member's Internet browser to a Facebook server, where it is stored in a Facebook database";

> (ii) "Facebook memory for storing a database containing liked or shared content with associated links and the above-mentioned transfer applet"; and,

> (iii) "An Internet browser on the Facebook member's computer that is coupled to both the third-party content-provider webserver memory and the Facebook memory and which executes the Facebook Transfer Script and the Facebook Transfer Applet in order to transfer annotated data that has been 'liked' or 'shared' by a Facebook member from the member's Internet Browser to a Facebook server, where it is stored in a Facebook database."

Second Amended Complaint. ¶ 82. Put simply, Rembrandt alleges that (i) Facebook's Facebook Transfer System uses all three elements of the claim 7 system, and (ii) Facebook derives a benefit from its use of this system because it "uses this collected information to provide content for the Facebook social network, and to generate targeted advertising to Facebook members." Second Amended Complaint, ¶ 83. Thus, unlike the *Centillion* defendant, Facebook itself is alleged to use every element of the claimed system, and accordingly, Rembrandt has adequately alleged direct infringement of the claim 7 system.

Second, Rembrandt has adequately alleged that defendants jointly 'use' all three elements of the claim 7 system. Specifically, Rembrandt alleges that the Facebook–AddThis Transfer System consists of:

> (i) "AddThis memory that stores the AddThis–Facebook widget that, when executed, requests that Facebook Transfer Applet that transfers data that has been 'liked' or 'shared' by a Facebook member from the member's browser to a Facebook server, where it is stored in a Facebook database";

> **\*9** (ii) "Facebook memory for storing a database containing liked or shared content with associated

links and the Facebook Transfer Applet"; and,

> (iii) "A browser on the Facebook member's computer that is coupled to both the AddThis memory and the Facebook memory and which executes the AddThis–Facebook widget and the Facebook Transfer applet in order to transfer annotated data that has been 'liked' or 'shared' by a Facebook memory from the member's browser to a Facebook server, where it is stored in a Facebook database."

Second Amended Complaint, ¶ 51. In other words, Rembrandt alleges that the defendants jointly place into use each element of the claim 7 system. Unlike the *Centillion* defendant, the defendants, not the consumers or customers, are alleged to have, themselves, placed into use each element of the claim 7 system. Accordingly, Rembrandt has adequately alleged that defendants jointly infringe Claim 7 by 'using' the system.

[9] Further, Rembrandt has adequately alleged that AddThis directly infringes claim 7 by 'making' the system. In this regard. Rembrandt alleges that AddThis makes the claim 7 system by making the entire Facebook–Add This Transfer System. Thus, because it is alleged that AddThis 'makes' the claim 7 system by combining all of the claim elements, it is clear that Rembrandt has adequately alleged that AddThis directly infringes claim 7.

Defendants argue that the direct infringement claims relating to the claim 7 system fail because the transfer script and transfer applet are only transferred to, and executed by, the client browser in response to the Facebook user pressing the 'Like' or 'Share' button. Thus, defendants argue that the direct infringement claims at issue here are indistinguishable from those in *Centillion*. This argument is not persuasive. To begin with, the pressing of the 'like' or 'share' button is not alleged to be an element of the Claim 7 system; instead, it is merely an action that precedes the operation of the system. Although defendants' use of the system may be preceded by a Facebook user pressing the 'like' or 'share' button, Rembrandt has adequately alleged that defendants place into use each element of the claimed system. In other words, even though defendants' use of the system may be put in motion by the Facebook user, defendants themselves directly infringe the system because they place into use each element of the claimed system. In *Centillion*, by contrast, the putative infringer only placed three of the four elements into use, with the fourth element being placed into use by the consumer. Importantly, this does not mean that the Facebook user does not infringe the claimed system when the user clicks

on the 'like' or 'share' button; to the contrary, the users may also infringe the claimed system by making use of each element. As the Federal Circuit's analysis in *Centillion* makes clear, a consumer's direct infringement does not preclude the producer's direct infringement. *See Centillion,* 631 F.3d at 1285–86. In other words, direct infringement by a consumer's use of a system (here, the pressing of the 'like' button), does not preclude the direct infringement by the producers (here, placing into use each element of the claimed system). Accordingly, the motion to dismiss the direct infringement of claim 7 of the ′362 patent must be denied. Of course, the result reached here in no way decides the ultimate direct infringement question, as the facts may ultimately develop such that this case will prove to be indistinguishable from *Centillion* and require the same result. Yet, it is clear that dismissal is not appropriate at the pleading Stage in this case because plaintiff has adequately pled the direct infringement of claim 7 of the ′362 patent.

## VI.

**\*10** For the reasons stated, defendants' motion to dismiss must be granted in part and denied in part. Defendants' motion to dismiss the claim for willful infringement must be granted, and that claim must be dismissed. Defendants' motion to dismiss the indirect infringement claim must be granted in part, and denied in part; it must be granted insofar as the claim seeks pre-filing damages and any claims for damages from indirect infringement must be limited to the period of time commencing with the service of the complaint. Defendants' motion to dismiss must be denied in all other respects.

An appropriate order will issue.

Footnotes

1    The facts recited here are derived from the second amended complaint, the patents in issue, and the parties' pleadings.

2    A system claim is a species of apparatus claims. *See Arris Group, Inc. v. British Telecommunications PLC,* 639 F.3d 1368, 1376 n. 8 (Fed.Cir.2011) ("Claims which recite a 'system,' 'apparatus,' 'combination.' or the like are all analytically similar in the sense that their claim limitations include elements rather than method steps."); *see also* Patent Claim Construction in the Federal Circuit § 1:23, at 122 (Edward D. Manzo ed., 2012).

3    *See, e.g., Apeldyn Corp. v. Sony Corp.,* 852 F.Supp.2d 568, 573 (D.Del.2012) (holding that "there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct"): *Walker Digital, LLC v. Facebook, Inc.,* 852 F.Supp.2d 559, 565 (D.Del.2012) (same); *Achates Reference Pub., Inc. v. Symantec Corp.,* No. 2:11cv294, 2013 WL 693955, \*2 (E.D.Tex. Jan. 10, 2013) ("there is no requirement to allege pre-suit knowledge of the patent to state a claim for contributory infringement"); *Intellect Wireless Inc. v. Sharp Corp.,* No. 10cv6763, 2012 WL 787051, \*11 (N.D.Ill. Mar. 9, 2012) ("[d]efendants' knowledge of the patent as of the time of the suit's commencement can satisfy the knowledge requirement for conduct that post-dates the date of the complaint"); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.,* 2011 WL 3946581, 4 (N.D.Ill. Sept. 2, 2011) (holding that post-filing knowledge is sufficient for Rule 8, Fed.R.Civ.P.); *Symantec Corp. v. Veeam Software Corp.,* No. C12–00700, 2012 WL 1965832, \*4 (N.D.Cal. May 31, 2013) ("The Court, however, will construe the complaints as covering indirect infringement for post-filing conduct, where the defendant's knowledge has been adequately alleged."); *Pacing Techs., LLC v. Garmin Int'l, Inc.,* No. 12cv1067, 2013 WL 444642, \*2 (S.D.Cal. Feb. 5, 2013) ("For inducement occurring after the filing date, such allegations of knowledge suffice.").

4    *See, e.g., Proxyconn Inc. v. Microsoft Corp.,* No. SACV 11–1681 DOC (ANx), 2012 WL 1835680, at \*5 (C.D.Cal. May 16, 2012) ("a complaint fails to state a claim for indirect patent infringement where the *only* allegation that purports to establish the knowledge element is the allegation that the complaint itself or previous complaints in the *same* lawsuit establish the defendant's knowledge of the patent"); *Brandywine Communications Techs., LLC v. T–Mobile USA, Inc.,* 904 F.Supp.2d 1260, 1267 (M.D.Fla.2012) ("weight of authority addressing the knowledge required for indirect infringement ... requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit").

5    *See, e.g., Apeldyn Corp.,* 852 F.Supp.2d at 573–74 ("The fact that plaintiff would be prohibited from collecting damages related to indirect infringement for any pre-knowledge (e.g., pre-filing) conduct is the only substantive consequence of allowing allegations such as those at bar to go forward.").

6    Notably, some of the minority view courts acknowledge that "Federal Rule of Civil Procedure 15(d) provides a procedure for pleading post-suit facts." *Proxyconn Inc.,* 2012 WL 1835680, \*6.

7       *See also* *State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed.Cir.1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it.").

8       A plaintiff's proper remedy for reckless post filing conduct is to seek a preliminary injunction, and "a decision to grant or deny a preliminary injunction is based on the district court's consideration of four factors: '(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Erico Int'l v. Vutec Corp.,* 516 F.3d 1350, 1353–54 (Fed.Cir.2008) (quoting *PHG Techs., LLC v. St. John Cos., Inc.,* 469 F.3d 1361, 1365 (Fed.Cir.2006)) (internal quotation marks omitted).

9       *See, e.g., LML Holdings, Inc. v. Pacific Coast Distributing, Inc.,* No. 11cv06173, 2012 WL 1965878, *5 (N.D.Cal. May 30, 2012) (noting that plaintiff there could not "cite a single case in which the fact that a suit was filed was grounds for a finding that an infringer's post-filing conduct ... [was] willful[ ]").

---

**End of Document**                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# ATTACHMENT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **U.S. ETHERNET INNOVATIONS, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **vs.** | § | **No. 6:12cv366 MHS-JDL** |
| | § | |
| **CIRRUS LOGIC, INC., et al.** | § | **JURY DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The Report and Recommendation issued on February 5, 2013 (Doc. No. 68) is withdrawn and the following is substituted in its place. Before the Court is Defendant Yamaha Corporation of America's ("Yamaha") Motion to Dismiss Plaintiff's Claims for Indirect Infringement and Willful Infringement (Doc. No. 24) ("Motion"). Plaintiff U.S. Ethernet Innovation LLC ("USEI") filed a Response (Doc. No. 35), to which Yamaha filed a Reply (Doc. No. 38) and USEI filed a Sur-Reply (Doc. No. 43). The briefing on the Motion was completed on September 14, 2012, and on September 21, 2012, USEI filed an amended complaint. (Doc. No. 45). On October 4, 2012, the Court granted the parties' Joint Motion to treat the papers filed on the original complaint as papers filed on the amended complaint. (Doc. No. 40, 6:12-cv-235). Upon consideration, the Court **RECOMMENDS** the Motion be **GRANTED.**

**BACKGROUND**

On June 4, 2012, USEI filed its original complaint against Cirrus Logic, Inc., Control4 Corporation, and Yamaha Corporation of America (collectively "Defendants") alleging infringement of U.S. Patent Nos. 5,732,094 ("'094 Patent"), 5,434,872 ("'872 Patent"),

5,307,459 ("'459 Patent), and 5,530,874 ("'874 Patent"). (Doc. No. 1) ("COMPLAINT"). On July 30, 2012, Yamaha filed the instant motion to dismiss claims of willful infringement and indirect infringement for failure to state a claim pursuant to FED.R.CIV.P 12(b)(6). Thereafter, USEI filed an amended complaint (Doc. No. 45) ("AMENDED COMPLAINT"). Pursuant to USEI's filing of an amended complaint, the parties submitted a joint motion to have the Court consider the briefing on the original complaint with regard to the amended complaint. As there were no substantive changes to the amended complaint related to the subject matter of the original briefing, the Court granted that joint motion. (Doc. No. 40-6:12-cv-235).[1] Portions of the amended complaint are set out below as representative of the dispute:

> Yamaha imports, makes, uses, offers for sale, and/or sells certain products and devices which embody one or more claims of the Patents-in-Suit, including, without limitation, products employing Ethernet technology similar to that found in Yamaha network home theater systems, for example the Yamaha RX-N600 network home theater receiver and/or the Yamaha RXV2700(collectively, the "Yamaha Accused Products").

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

> Without a license or permission from USEI, Defendants have infringed and continue to infringe one or more claims of the [Patent], directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

> Defendants directly contribute and induce infringement through supplying infringing systems and components to Defendants' customers. Defendants' customers who purchase systems and components thereof and operate such systems and components thereof in accordance with Defendants' instructions directly infringe one or more claims of the [Patent], in violation of 35 U.S.C. § 271.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

> Defendants have had actual or constructive knowledge of the [Patent], yet continue to infringe said patent. The infringement of the [Patent] by Defendants is willful and deliberate, entitling USEI to increased damages under

---

[1] The amended complaint adds U.S. Patent No. 5,299,313 (the "'313 Patent").

35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

AMENDED COMPLAINT at 4−10.

## LEGAL STANDARD

Motions to dismiss for failure to state a claim are governed by regional circuit law. *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1355-56 (Fed.Cir. 2007)). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *McZeal,* 501 F.3d at 1356 (internal quotations omitted); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 243 (5th Cir. 2010). Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 545 (2007) (interpreting Rule 8); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684-685, 129 S. Ct. 1937, 1949-50, 1953 (2009) (applying *Twombly* generally to civil actions pleaded under Rule 8). "'[D]etailed factual allegations'" are not required. *Iqbal,* 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In the patent context, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357 (citing *Twombly*, 550

U.S. at 565 n.10). Further, the Federal Circuit has definitively held that whether a complaint adequately pleads direct infringement is to be measured by the specificity required by Form 18. *Bill of Lading*, 681 F.3d at 1334; *see also* FED. R. CIV. P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."); *Twombly*, 550 U.S. at 569 n.14 (acknowledging that altering the Federal Rules of Civil Procedure cannot be accomplished by judicial interpretation). Form 18 provides a sample complaint for patent infringement and does not require extensive factual pleading:

(Caption—See Form 1.)

1. (Statement of Jurisdiction--See Form 7.)

2. On *date*, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent.

3. The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

4. The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all *electric motors* it manufactures and sells and has given the defendant written notice of the infringement.

Therefore, the plaintiff demands:

(a) a preliminary and final injunction against the continuing infringement;
(b) an accounting for damages; and
(c) interest and costs.

(Date and sign—See Form 2.)

FED. R. CIV. P. Form 18 (2007); *see also Bill of Lading,* 681 F.3d at 1334 (describing the requirements of Form 18). Thus, to the extent that *Twombly* and its progeny conflict with Form 18 and establish different pleading requirements, "the Forms control." *Id.* at 1336-37.

However, Form 18 applies only to direct infringement claims and thus cannot measure the sufficiency of indirect infringement or willful infringement pleadings. *Id.* Thus, claims for indirect infringement or willful infringement must be judged by the pleading standards articulated in *Twombly* and *Iqbal*. *Id.* ("[B]ecause Form 18 addresses only direct infringement, we must look to Supreme Court precedent for guidance regarding the pleading requirements for claims of indirect infringement").

## DISCUSSION

Yamaha maintains that USEI's amended complaint is insufficient insofar as it addresses allegations of inducement, contributory infringement, and willful infringement. *See* MOTION AT 1.

### A. Inducement Allegations

As mentioned above, because Form 18 does not expressly pertain to indirect infringement, the general principles of *Twombly* and *Iqbal* apply to indirect infringement claims. *Bill of Lading,* 681 F.3d at 1336-37 (internal citation omitted). Under 35 U.S.C. § 271(b), induced infringement requires a showing of: (1) direct infringement by another; and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 420 F.3d 1369, 1378 (Fed. Cir. 2005). A party is liable for induced infringement if it knew that the induced acts constituted patent infringement. *See* 35 U.S.C. § 271 (b); *Global-Tech Appliances, Inc. v. SEB S.A.*, --- U.S. ----, 131 S.Ct. 2060, 2068 (2011); *Bill of Lading,* 681 F.3d at 1339. Thus, to survive Yamaha's Motion to Dismiss, USEI's complaint must contain sufficient facts alleging a direct infringer and plausibly showing that Yamaha specifically intended a third party to commit

acts that it knew constituted infringement. *See Bill of Lading*, 681 F.3d at 1339. However, this does not mean that USEI "must prove itself at the pleading stage." *Id.*

Yamaha asserts that USEI's complaint fails to meet the pleading requirements for inducement because it does not allege the requisite intent element or "knowledge that its customer's acts constituted infringement." MOTION at 5. USEI responds that an inference can be drawn from its allegations that Yamaha intended its customers to infringe and had knowledge that its customers' acts constituted infringement. RESPONSE at 7.

Essentially, USEI argues that a reasonable inference of intent and knowledge can be made from the following allegations in its complaint: (1) Yamaha has actual or constructive knowledge of the asserted patents, yet continues to infringe; (2) Yamaha supplies "infringing systems and components to [its] customers;" and (3) Yamaha's "customers who purchase systems and components thereof and operate such systems and components thereof in accordance with [Yamaha's] instructions directly infringe one or more claims." RESPONSE at 7. Here, USEI's complaint alleges a direct infringer, namely Yamaha's customers, but nevertheless fails to: (1) recite the elements of an inducement claim; and (2) allege any facts that, if taken as true, establish a plausible inference that Yamaha had the specific intent to induce its customers actions, and knowledge that those actions amounted to infringement. It is well-established that "naked assertions devoid of 'further factual enhancement'" are insufficient to state a claim. *See Iqbal,* 556 U.S. 662. at 678 (quoting *Twombly*, 550 U.S. at 555). USEI's allegations that Yamaha "supplies" infringing systems and components and provides "instructions" to its customers who allegedly infringe do not create a reasonable inference of inducement. In sum, USEI's complaint as to its inducement allegations fails to provide Yamaha with adequate notice.

**B.  Contributory Infringement Allegations**

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)).  Thus, to state a claim for contributory infringement, USEI must, among other things: (1) identify the "material or apparatus for use in practicing [the] patented process" that is sold or offered for sale by Defendants and (2) "plead facts that allow an inference that [these] components . . . have no substantial non-infringing uses." *Id.* (citations omitted).

For the reasons stated above, the Court finds that USEI's complaint sufficiently identifies a direct infringer.  However, the complaint fails to go beyond that to put Yamaha on notice of a claim of contributory infringement. Particularly, the complaint is devoid of any allegation from which the Court can plausibly infer that any components being sold have "no substantial non-infringing uses."  USEI contends that such an inference can be made from its allegations that the accused products "embody the patented invention" and Yamaha's "customers who purchase systems and components thereof and operate such systems and components thereof in accordance with [Yamaha's] instructions directly infringe one or more claims." However, those allegations by USEI do not alone create a reasonable inference that the accused components have no substantial non-infringing use. In fact, USEI's allegation that customers infringe when they use operating systems and components in accordance with Yamaha's instructions actually creates an inference that they might otherwise be used in a non-infringing manner. Accordingly, the Court finds that USEI's contributory infringement allegations fail to state a claim.

### C.  Willful Infringement Allegations

A plaintiff need only a good faith basis for alleging willful infringement. *In re Seagate Technology*, LLC, 497 F.3d 1360, 1374 (Fed. Cir. 2007). To succeed on a cause of action for willful infringement a party must show an "objectively high likelihood that its actions constituted infringement" and that this "objectively-defined risk was ... either known or so obvious that it should have been known to the accused infringer." *Id.* at 1371. Accordingly, at the pleading stage, a plaintiff alleging willful infringement should provide enough facts that, when taken as true, show objective recklessness[2] of the infringement risk.

Here, with regard to willful infringement USEI makes only the following allegations: "Defendants have had actual or constructive knowledge of the [Patent], yet continue to infringe said patent" and "[t]he infringement of the [Patent] by Defendants is willful and deliberate." Again, USEI's allegations fail to state any facts that could be taken as true to recite a relief-worthy claim for willful infringement. *Iqbal*, 556 U.S. 662 at 678. As it stands, USEI's allegation is devoid of any facts that create an inference of Yamaha's objective recklessness; it only makes the conclusory assertion that Yamaha had knowledge of the asserted patents and continued to infringe. Without more, USEI's allegation of willful infringement fails to provide adequate notice.

### D.    Leave to Amend the Complaint

USEI moves the Court for leave to amend its pleadings to correct any deficiencies in the First Amended Complaint.  SUR-REPLY at 6.  The Court hereby **GRANTS** USEI leave to amend its complaint to supplement its allegations of inducement, contributory infringement, and willful infringement.

---

[2] By using the term "objective recklessness" it is the Court's intent to encompass the objective and subjective requirements of a willfulness inquiry.

## CONCLUSION

Accordingly, the Court **RECOMMENDS** Yamaha's Motion to Dismiss Indirect Infringement Claims and Willfulness Infringement be **GRANTED**.  The Court further **GRANTS** USEI leave to amend its complaint within fourteen days of the date of this Order to comply with Rule 8 as described herein.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in this report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**So ORDERED and SIGNED this 7th day of February, 2013.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE