**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BALTIMORE AIRCOIL COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPX COOLING TECHNOLOGIES, INC. | ) | Civil Action No. 1:13-cv-02053 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SPX COOLING TECHNOLOGIES, INC.'S MOTION
TO STAY THE SUIT PENDING EX PARTE REEXAMINATION OF PATENT-IN-SUIT**

Defendant SPX Cooling Technologies, Inc. ("SPX"), through its undersigned counsel, pursuant to L. Pat. R. 807, moves this Honorable Court to stay all proceedings in this suit pending a final determination of the *Ex parte* Reexamination of U.S. Patent No. 7,107,782 ("the '782 patent") assigned to Baltimore Aircoil Company, Inc. ("BAC" or "Plaintiff"), and the issuance of an Ex Parte Reexamination Certificate pursuant to 35 U.S.C. §307 (a "Reexamination Certificate").   The basis for this motion is set forth in the accompanying Memorandum by Law.

Dated: February 25, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ *Michael E. Anderson*
Michael E. Anderson (Bar No. 800996)
(*admitted pro hac vice*)
Phone: (202) 861-1575
manderson@bakerlaw.com

Kenneth J. Sheehan (800798)
(*admitted pro hac vice*)
Phone: (202) 861-1682
ksheehan@bakerlaw.com

Andres F. Arrubla (800796)
(*admitted pro hac vice*)
Phone: (202) 861-1712
aarrubla@bakerlaw.com

**Baker & Hostetler LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Defendant SPX Cooling*
*Technologies, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BALTIMORE AIRCOIL COMPANY, INC., | ) | |
| 7600 DORSEY RUN ROAD, | ) | |
| JESSUP, MARYLAND 20794, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:13-cv-02053 |
| v. | ) | |
| | ) | |
| SPX COOLING TECHNOLOGIES, INC. | ) | |
| 7401 WEST 129 STREET | ) | |
| OVERLAND PARK, KS 66213, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT SPX COOLING TECHNOLOGIES,
INC.'S MOTION TO STAY THE SUIT PENDING EX PARTE REEXAMINATION OF
PATENT-IN SUIT**</u>

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ............................................................................. 1

II. BACKGROUND REGARDING REEXAMINATION PROCEEDINGS ........................ 3

III. FACTUAL BACKGROUND .......................................................................... 3

    A. The Reexamination Request Presents Highly Relevant Prior Art Affecting Validity And Claim Scope Of Claims 16-26 Of The '782 Patent ......................... 3

    B. The Granted Reexamination Request And First Office Action Confirm That Claims 16-26 Of The '782 Patent Are Invalid or Will Require Significant Amendment ......................................................................................... 6

        1. The Patent Office's Decision To Grant The Reexamination Request Demonstrates That Claims Of The '782 Patent Including Asserted Claim 22 Are Invalid ............................................................................. 6

        2. The Issuance Of The First Office Action Demonstrates That Claims Of The '782 Patent, Including Asserted Claim 22, Are Invalid....................... 7

IV. ARGUMENT ............................................................................................ 7

    A. A Stay Will Simplify The Issues Before The Court ................................................ 8

    B. The Early Stage Of This Suit Favors A Stay ....................................................... 11

    C. SPX Was Diligent In Seeking A Stay................................................................. 11

    D. BAC Will Not Be Prejudiced By The Stay.......................................................... 12

V. CONCLUSION............................................................................................ 14

# TABLE OF AUTHORITIES

Cases

*A. C. Aukerman Co. v. R. L. Chaides Const. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992)............................................................................12

*Adelberg Laboratories, Inc. v. Miles, Inc.*,
   921 F.2d 1267 (Fed. Cir. 1990)............................................................................12

*Akzenta Paneele Profile GmbH v. Unilin Flooring N.C. LLC*,
   464 F. Supp. 2d 481 (D. Md. 2006).......................................................................7

*Alloc, Inc. v. Unilin Décor N.V.*,
   2003 U.S. Dist. LEXIS 11917 (D. Del. Jul. 11, 2003) ...........................................8

*Cellectis S.A. v. Precision Biosciences, Inc.*,
   No. 5:08-CF-00119-H, 2010 U.S. Dist. LEXIS 91043, 2010 WL 3430854 (E.D.N.C.
   August 31, 2010)...................................................................................................13

*Classen Immunotherapies, Inc. v. Biogen Idec, et al.*,
   No. DQ-04-2607, 2013 U.S. Dist. LEXIS 24836 (D. Md. February 22, 2013).......12

*Cornerstone BioPharma, Inc. v. Vision Pharma, LLC*,
   No. 5:07-CV-00389-F, 2008 U.S. Dist. LEXIS 76374 (E.D.N.C. Feb. 15, 2008) ...................7

*E.I. du Ponte de Nemours & Co. v. Phillips Petroleum Co.*,
   49 F.2d 1430 (Fed. Cir. 1988)..............................................................................10

*Emhart Industries v. Sankyo Seiki Mfg.*,
   3 U.S.P.Q.2d 1889 (N.D. Ill. Feb. 2, 1987) ...........................................................8

*Ethicon Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988)..............................................................................7

*Generac Power Sys. v. Kohler Co.*,
   807 F. Supp. 2d 791 (E.D. Wis. 2011)...................................................................10

*Gioello Enters. Ltd. V. Mattel, Inc.*,
   2001 U.S. Dist. LEXIS 26158 (D. Del. Jan. 29, 2001)...........................................13

*Gonnoci Rev. Living Trust v. Three M Tool & Mach., Inc.*,
   68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003).................................................................10

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed Cir. 1983)..........................................................................................7, 9

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
672 F.3d 1350 (Fed. Cir. 2012) (*en banc*) .............................................................................10

*Odetics Inc. v. Storage Tech. Corp.*,
919 F. Supp. 911 (1996) ...........................................................................................................12

*Perricone v. Unimed Nutritional Services, Inc.*,
No. 301CV512, 2002 WL 31075868 (D. Conn. July 18, 2002) ................................................8

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
2010 U.S. Dist. LEXIS 120222 (N.D. Ohio Nov. 12, 2010) ....................................................11

*In re Webvention LLC ' 294 Patent Litig.*,
868 F. Supp. 2d 500 (D. Md. 2012) ......................................................................................7, 8

## STATUTES

35 U.S.C. § 102(b) ...........................................................................................................1, 4, 7

35 U.S.C. § 103(a) ...............................................................................................................4, 7

35 U.S.C. § 302 (2012) ............................................................................................................2

35 U.S.C. § 303(a) (2012) .......................................................................................................3

35 U.S.C. § 305 (2012) ............................................................................................................3

35 U.S.C. § 307(a) (2012) .......................................................................................................3

## MARYLAND LOCAL RULES

L. Pat. R. 807 ........................................................................................................................11

## I.    SUMMARY OF ARGUMENT

SPX respectfully requests a stay of this suit until the conclusion of the ongoing *Ex parte* reexamination by the U.S. Patent and Trademark Office ("the Patent Office') of U.S. Patent No. 7,107,782 ("the '782 patent") assigned to BAC, and the issuance of an Ex Parte Reexamination Certificate  pursuant to 35 U.S.C. §307 (a "Reexamination Certificate").  Specifically, at least claims 16-26 of the '782 patent will more than likely be changed or canceled pursuant to the granted *Ex parte* reexamination request dated November 20, 2013 (EXHIBIT A, Decision Granting Request for Reexamination), and the first Office Action dated February 6, 2014.  (*See* Office Action appended hereto as EXHIBIT B.)

In granting the request for reexamination, the Patent Office determined that there is a "Substantial New Question of Patentability" with regard to claims 16-26 of the '782 patent (Ex. A, at 2).  On February 6, 2014, the Patent Office issued a first Office Action rejecting these claims on multiple grounds.  (Ex. B, at 3-9).  Claim 22, the only claim identified in the Complaint, was rejected on three separate grounds.[1]  (*Id*.)

In particular, the Patent Office found that each claim was anticipated under 35 U.S.C. § 102(b) by U.S. Patent No. 5,435,382 ("the Carter patent").  BAC already amended the claims of the European counterpart of the '782 patent in order to avoid a rejection based on a divisional of the Carter patent.[2]  It is very likely that it will be forced to (*at least*) amend the claims of the asserted '782 patent to avoid the same rejection during the reexamination.

---

[1] On November 1, 2013, BAC filed a First Amended Complaint (FAC).  The only claim specifically alleged to be infringed in the FAC was also claim 22. (Dkt. 22, at 2.)

[2] A divisional patent has an identical disclosure as its "parent" application.  Thus, there is no substantive difference between the information disclosed in the Carter patent and its divisional, the '318 patent, that formed the basis of the rejection of the '782 patent's European counterpart.

Staying this case pending the outcome of the reexamination would promote judicial economy and save both the parties and the Court the cost and time associated with an unnecessary litigation (or series of litigations).[3]   A stay would simplify issues for trial by clarifying and/or resolving issues of claim construction, claim scope and validity.  For example, if the claims asserted in BAC's complaint are canceled during reexamination, the suit would end.  Even if these claims survived in amended form, the amendments would affect claim scope, and therefore trigger intervening rights.  It also makes little sense to proceed forward with an analysis of claim construction, invalidity and infringement when the scope of the claims being asserted is very likely to change during the reexamination.  A stay will benefit all parties (and the Court) because it will avoid the expense and time of litigating claims that are likely to be cancelled or amended.

Further, BAC would not be prejudiced by a stay.  This suit is in its infancy.  A scheduling order has not been entered and discovery has not yet opened, so the parties have not expended significant resources on the litigation.  Moreover, BAC has or should have known about the accused Marley MH Fluid Cooler for at least eight (8) years, and the '782 patent issued 7 years ago.  The duration of the stay pending the conclusion of the *Ex parte* reexamination would be significantly shorter than BAC's own delay in bringing this suit.

For the foregoing reasons, as well as those set forth below, SPX respectfully requests this Court to stay the case pending the resolution of the reexamination.

---

[3] BAC has also filed a separate action in the Eastern District of Texas against two end-users of the Marley MH Cooler—Sanderson Farms Inc. (a chicken farm), and Eagle Mountain International Church, Inc. (a church).  This action is styled *Baltimore Aircoil Company, Inc. v. Sanderson Farms, Inc. et al*, Case No. 6:14-cv-00002 in the Eastern District of Texas.  The parties have agreed to transfer that case to Maryland, and have agreed to ask to consolidate that case with the present action.  When that action is transferred to this district, it should also be stayed.

## II.      BACKGROUND REGARDING REEXAMINATION PROCEEDINGS

The Patent Act allows any person at any time to file a request for reexamination by the Patent Office of any patent claim on the basis of prior art.  35 U.S.C. § 302 (2012).  Within three months of filing the request for reexamination, the Patent Office will determine whether a "susbstantial new question of patentability" affecting any claim of the patent concerned is raised by the request.  35 U.S.C. § 303(a) (2012).  Congress promulgated that all reexamination proceedings, including any appeals, be conducted with "special dispatch" within the Patent office.  35 U.S.C. § 305 (2012).  After completing the reexamination, the Patent Office will issue a certificate (i) cancelling any claim of the patent finally determined to be unpatentable, (ii) confirming any claim of the patent determined to be patentable, and (iii) incorporating into the patent any proposed amended or new claim determined to be patentable.  35 U.S.C. § 307(a) (2012).

The Patent Office's statistics reveal that 66% of all *Ex parte* reexamination certificates issue with at least some claim changes while 12% issue with all claims being canceled.  (*See Ex parte* Reexamination Filing Data dated September 30, 2013, appended hereto as EXHIBIT C, at 2.)  In total, 78% of all *Ex parte* reexamination certificates recite claims either being cancelled or changing in scope from their originally issued patents.

## III.     FACTUAL BACKGROUND

### A.      The Reexamination Request Presents Highly Relevant Prior Art Affecting Validity And Claim Scope Of Claims 16-26 Of The '782 Patent

BAC filed its complaint on July 16, 2013.  The complaint only identified claim 22 of the '782 patent as being infringed by SPX.  (Dkt. 1, at 2.)  Upon receipt of the complaint, SPX promptly began preparing its defense to the patent infringement suit, and continued, *inter alia*, a

review of the prior art.  SPX's analysis determined that there was a substantial amount of prior

art that renders the claims of the '782 patent invalid.  Using the prior art it uncovered, SPX

prepared and promptly filed a request for *Ex parte* Reexamination of claims 16-26 of the '782

patent on October 24, 2013.  *See* Reexamination request appended hereto as EXHIBIT D.  The

request explained that:

- Claims 16-26 of the '782 patent are invalid under 35 U.S.C. §102(b) as anticipated by
  the Carter patent;

- Claims 16-18 and 22-23 of the '782 patent are obvious under 35 U.S.C. § 103(a)
  under in light of U.S. Patent Nos. 2,403,841 ("the Baird patent") in view of U.S.
  Patent 4,317,785 ("the Dickey patent");

- Claims 19-21 and 24-26 of the '782 patent are obvious under 35 U.S.C. § 103(a) in
  light of the Baird patent in view of the Dickey patent and U.S. Patent No. 2,369,264
  ("the Brink patent"), and

- Claims 22, 23 and 26 of the '782 patent are obvious under 35 U.S.C. § 103(a) in light
  of U.S. Patent No. 2,247,514 ("the Mart patent") in view of the Dickey patent.

(*Id.*, at 14-15.)

As noted by the Patent Office in granting the request for reexamination, the Carter patent

was described in the specification of the '782 patent,[4] but is criticized and distinguished on the

grounds that Carter patent discloses evaporative heat transfer units in which the indirect heat

transfer section is <u>above</u> the direct heat transfer section.  (Ex. A at 7-8; Ex. E, at 1:20-22 ("[t]his

means the indirect evaporative section must be located in the upper section of the heat exchange

apparatus."))  The '782 patent's specification purports to distinguish its alleged inventions over

the Carter patent because the direct evaporative section in the '782 patent is allegedly located

above the indirect evaporative section (*i.e.*, the configuration is allegedly the opposite of what is

disclosed by the Carter patent).  (Ex. E at 2:18-22 ("[i]t is also an object of the present invention

---

[4] The Carter patent has the same sole inventor as the '782 patent, *i.e.*, Thomas P. Carter.  (*See* the '782 patent appended hereto as EXHIBIT E, cover page.)

to provide a heat exchange apparatus and method including a direct evaporative heat exchange section above an indirect evaporative heat exchange section,…")).  Importantly, however, none of method claims 16-26 of the '782 patent require the direct evaporative section be located above the indirect evaporative section.  Thus, as noted by the Patent Office, the distinction the Applicant made between the Carter patent in the specification of the '782 patent is not present in claims 16-22 of the '782 patent.  (Ex. A at 7-8.)  To the contrary, claims 16-21 of the '782 patent directly read on FIG. 12 of the Carter patent, and claims 22-26 of the '782 patent directly read on FIG. 2 of the Carter patent.  (*See* Ex. D, at 15-18.)

Moreover, a divisional of the Carter patent, *i.e.*, U.S. Patent No. 5,816,318 ("the '318 patent")[5] was asserted against a counterpart European application of the '782 patent.  To distinguish over its own prior art during prosecution of the European application, BAC acknowledged that the method claims of the European patent application as filed (which correspond to issued claims 1-11 and 16-26 of the '782 patent) do <u>not</u> require the direct evaporative section to be positioned above the indirect evaporative section, and amended its claims to include this limitation.  (*See* European amendments filed April 1, 2010, at pgs. 5-13 appended hereto as EXHIBIT F, wherein claim 22 was amended to be the sole independent method claim requiring the direct evaporative section "positioned above" the indirect evaporative section.)

Given that the Carter patent contains the same disclosure as the '318 patent that forced BAC to amend claims that are almost identical to claims 16-26 of the '782 patent during prosecution of the '782 patent's European counterpart, it is very likely BAC will be forced to at

---

[5] As noted above, the '318 patent is a divisional of the BAC '382 patent and therefore has an identical disclosure.

least amend claims 16-23 in light of the Patent Office's pending rejection based on the Carter patent.

    **B.**    **The Granted Reexamination Request And First Office Action Confirm That Claims 16-26 Of The '782 Patent Are Invalid or Will Require Significant Amendment**

          **1.**    **The Patent Office's Decision To Grant The Reexamination Request Demonstrates That Claims Of The '782 Patent Including Asserted Claim 22 Are Invalid**

On November 20, 2013, the Patent Office agreed that each argument raised by SPX created a substantial new question of patentability, and initiated the reexamination.  (Ex. A, at 6-12.)  In particular, in granting the request for reexamination the PTO specifically noted that the entire basis on which BAC had distinguished the invention of the '782 patent from the Carter patent was not shown in the claims:

> Independent claim 22 is seen as claiming the same elements as claim 16, as discussed above, with the exception of the air moving across the direct evaporative section.  This feature appears to be shown in figure 2 of Carter '382.
>
> The '382 patent was discussed in the first column of the '782 patent.  This discussion includes the shortcomings of the '382 patent, additional requirements on the apparatus structure to support the mass of the indirect section at higher elevations and the restriction of discharge air flow due to the placement of the indirect heat transfer section.  None of claims 16-26 contains any structure to overcome these stated deficiencies.

(Ex. A, at 7-8.)  This observation, coupled with the Patent Office's rejection in the first office action, further support SPX's defenses of invalidity and inequitable conduct, as they demonstrate both the materiality of the Carter patent and support SPX's allegation that BAC made misleading statements to obtain its patent.  (*See* Dkt. No. 30, at ¶¶ 48-54.)

2.      **The Issuance Of The First Office Action Demonstrates That Claims Of The '782 Patent, Including Asserted Claim 22, Are Invalid**

The first Office Action rejecting each of claims 16-26 of the '782 patent was mailed on February 6, 2014.  (Ex. B, at 1.)  In the first Office Action, the Patent Office rejected claims 16-26 on all of the grounds set forth in SPX's request for reexamination.  Specifically, claims 16-26 stand rejected as being anticipated by the Carter patent under 35 U.S.C. § 102(b).  (*Id.*, at 3.) Claims 16-18 and 22-23 stand rejected as being obvious over the Baird patent in view of the Dickey patent under 35 U.S.C. § 103(a).  (*Id.*)  Claims 19-21 and 24-26 stand rejected as being obvious over the Baird patent in view of the Dickey patent in further view of the Brink patent. Finally, claims 22, 23, and 26 stand rejected as obvious over the Mart patent in view of the Dickey patent.  (*Id.*)  Claim 22 of the '782 Patent – the only claim asserted in the complaint as being infringed—presently stands rejected over three (3) separate rejections. (*Id.*)  In view of these rejections made by the Examiner, it is very likely the scope of asserted claim 22, as well as claims 16-21 and 23-26, will either be cancelled or will require substantive amendments to survive the validity challenge.

## IV.    ARGUMENT

District Courts have the "inherent power to manage their dockets and stay proceedings…including the authority to order a stay pending conclusion of a PTO reexamination."  *In re Webvention LLC '294 Patent Litig.*, 868 F. Supp. 2d 500, 504 (D. Md. 2012) (quoting *Akzenta Paneele Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 484 (D. Md. 2006), (quoting *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988))).  "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *Cornerstone BioPharma, Inc. v.*

*Vision Pharma, LLC*, No. 5:07-CV-00389-F, 2008 U.S. Dist. LEXIS 76374, at *4 (E.D.N.C. Feb. 15, 2008); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed Cir. 1983) (affirming stay because "[w]hen a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved").

This Court weighs three factors in determining whether to grant a stay pending reexamination: "(1) the stage of the proceedings; (2) whether a stay would unduly prejudice the nonmoving party; and (3) whether a stay would simplify issues and the trial of the case." *In re Webvention LLC,* 868 F. Supp. 2d at 504. Each of these factors weighs in favor of staying this litigation pending the outcome of the reexamination.

**A.     A Stay Will Simplify The Issues Before The Court**

Numerous advantages exist for this Court to grant a stay pending the outcome of the reexamination before the Patent Office. Specifically,

- Some of prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
- Many discovery problems relating to prior art can be alleviated by the PTO examination.
- In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
- The outcome of the reexamination may encourage a settlement without the further use of the Court.
- The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
- Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination.
- The cost will likely be reduced both for the parties and the Court.

*See Perricone v. Unimed Nutritional Services, Inc.*, No. 301CV512, 2002 WL 31075868, at *1-2 (D. Conn. July 18, 2002) (quoting *Emhart Industries v. Sankyo Seiki Mfg.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. Feb. 2, 1987). Moreover, "it is beyond dispute that the court would benefit from

8

a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation." *Alloc, Inc. v. Unilin Décor N.V.*, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. Jul. 11, 2003).

Claims 16-26 of the '782 patent are complex. They describe detailed technical methods of exchanging heat in a heat exchange apparatus, including directing evaporative liquid and air flow. The Patent Office has dedicated personnel with knowledge of the technology and prior art references. The Court will likely benefit from the Patent Office's expertise and technical assessment of the claims during reexamination. *Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of [the validity] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)").

Moreover, a stay would avoid the duplication of efforts, including assessment of the validity of the claims in light of the references at issue in the reexamination, and eliminate inconsistent verdicts by this Court and the Patent Office. Presently, each of claims 16-26 of the '782 patent stands rejected pursuant to the Office Action dated February 6, 2014. The Patent Office argues that claims 16-26 of the '782 patent are both anticipated and obvious in view of the several references, and has raised four separate grounds of rejection. Claim 22, the only claim identified in Plaintiff's complaint, is subject to three separate rejections. Absent a showing by BAC that claims 16-26 of the '782 patent are novel and/or nonobvious over the asserted prior art references, or an amendment to the claims to avoid the rejections, these claims will likely be held invalid and therefore unenforceable against SPX.

Even if the claims were to survive reexamination, there is a strong likelihood they would be amended from their original form affecting claim scope. As discussed above, during

prosecution of the European counterpart of the '782 patent, BAC was forced to amend identical claims based on an identical disclosure to the Carter patent that forms the basis of one of the Patent Office's rejections of claims 16-26.  (*See* Ex. F, at 5-13.)  If the claims are amended, then the issues of claim construction, invalidity, infringement and non-infringement may change or even be rendered moot.  It makes little sense for this Court to consider these issues when the scope of the claims may be changed by the reexamination.  Further, when amendments are made, there is a presumption of triggering intervening rights.  *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350 (Fed. Cir. 2012) (*en banc*) (holding that intervening rights in reexaminations apply to claims that have been amended).    This would bar Plaintiff from recovering damages prior to the amendment, and could impact damages issues.

Further, even if the claims are not cancelled or amended, the reexamination may produce a more robust file history, and may elicit statements from both BAC and the examiner that may reflect on the proper claim scope of the claims and may therefore impact claim construction.  In particular, any distinctions or arguments that BAC would make to try to avoid the prior art would also be relevant to issues of claim construction.  *See also E.I. du Ponte de Nemours & Co. v. Phillips Petroleum Co.*, 49 F.2d 1430, 1439 (Fed. Cir. 1988) ("statements made during the prosecution history, including reexamination proceedings, are relevant to determining claim scope.")  Thus, granting a stay while the Patent Office determines the patent's validity is an efficient use of judicial resources and efforts.  *Gonnoci Rev. Living Trust v. Three M Tool & Mach., Inc.*, 68 U.S.P.Q. 2d 1755, 1758 (E.D. Mich. 2003) (holding that a stay can be appropriate even where considerable time and resources were already spent, if significant work remains to be done, including responses and judicial review of summary judgment motions and preparation for trial).

### B.      The Early Stage Of This Suit Favors A Stay

Courts routinely grant a stay where, as in the present case, the litigation and discovery are in their incipient stages. *Generac Power Sys. v. Kohler Co.*, 807 F. Supp. 2d 791, 796 (E.D. Wis. 2011) (the Court granted defendant's motion to stay pending *Ex parte* reexamination because the parties had not engaged in discovery, the Rule 16 scheduling conference had not been held, and no dates for discovery, claim construction proceedings, or the trial had been established); *see also Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, 2010 U.S. Dist. LEXIS 120222, at *12-13 (N.D. Ohio Nov. 12, 2010) (the Court granted defendant's motion to stay pending *Ex parte* reexamination since the litigation was in an early stage and discovery had just begun).

The present litigation is still in its infancy.[6]  BAC filed its complaint against SPX on July 16, 2013.  A Scheduling Order has not been entered, discovery has yet to commence and a trial date has not been set.  The parties have not commenced their invalidity, claim construction and infringement/non-infringement analyses.  Thus, the significant expenditures associated with discovery have not yet begun. It makes sense to stay this case before these time and labor intensive activities begin, particularly given that the claims may be cancelled or amended.

### C.      SPX Was Diligent In Seeking A Stay

SPX's conduct in this suit shows that it has not sought a tactical advantage by seeking this stay.   SPX has been diligent in seeking this stay by promptly filing a request for reexamination even before answering the complaint.  Moreover, SPX informed the Court of its intention to seek a stay on November 11, 2013.  (Dkt. 33, Ex. 2.)  Further, SPX promptly filed the present motion upon satisfying the conditions of L. Pat. R. 807.

---

[6] Similarly, the litigation that BAC filed against SPX's customers in Texas is in its early stages, as a scheduling order has not been entered and discovery has not even begun.

**D.      BAC Will Not Be Prejudiced By The Stay**

Moreover, BAC would not be prejudiced by a stay.  As noted above, this suit is in its incipient stages and BAC has not engaged in significant expenditures related to this case. Staying the present litigation also poses no prejudice or tactical disadvantage to BAC in view of its own delay in bringing the present suit.  The Marley MH Fluid Cooler has been on the market for nearly 8 years.  While the '782 patent issued 7 years ago, BAC waited until July of 2013 to accuse the Marley MH Fluid Cooler of infringement. BAC attended and presented its own products at the same tradeshow in February of 2005 where the Marley MH Fluid Cooler was featured.  (*See* EXHIBITS G and H, featuring the Marley MH Fluid Cooler in newsletter articles to the Cooling Industry dated February 25, 2005, and April 28, 2005, respectively.) In 2010, it even wrote letters to SPX's predecessor, Marley Cooling Technologies, Inc., complaining about advertisements relating to the Marley MH Fluid Cooler. (*See* Letter dated July 8, 2010, from BAC appended hereto as EXHIBIT I.)  Notably, however, notwithstanding its knowledge of the MH Fluid Cooler for nearly eight (8) years, BAC never indicated to SPX that the Marley MH Fluid Cooler was allegedly infringing the '782 patent until the day BAC formally filed its complaint.

BAC's unjustified delay gives rise to a presumption of laches.  *A. C. Aukerman Co. v. R. L. Chaides Const. Co.*, 960 F.2d 1020, 1034 (Fed. Cir. 1992) (*en banc*), discussed *infra*; *Adelberg Laboratories, Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990) ("[w]hen a patentee delays more than six years before filing suit, the delay is presumed to be both unreasonable and prejudicial to the defendant.")  In *Odetics Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 918 (1996), the Eastern District of Virginia Court, after reviewing the case law, derived the following "sensible guiding principle": "If a patentee knows of the existence of a

product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective, he has a duty to examine the product or device more closely to ascertain whether it infringes his patent."  If he shirks this duty, he does so on peril of triggering the laches period and perhaps ultimately losing his right to recover damages for the infringement.

According to the Patent Office's statistics, the median pendency for a reexamination is 20.5 months.  (Ex. C, at 1.)  BAC's own delay in bringing this suit far exceeds the amount of time the Patent Office will need to conduct the reexamination.  Any extension of the suit pursuant to a stay would be minor compared to BAC's own deliberate delays in filing this suit. Moreover, this Court has stated that "delay is inherent in the reexamination process and does not constitute, by itself, undue prejudice." *Classen Immunotherapies, Inc. v. Biogen Idec, et al.*, No. DQ-04-2607, 2013 U.S. Dist. LEXIS 24836, at *2 (D. Md. February 22, 2013) (quoting *Cellectis S.A. v. Precision Biosciences, Inc.*, No. 5:08-CF-00119-H, 2010 U.S. Dist. LEXIS 91043, 2010 WL 3430854, at *4 (E.D.N.C. August 31, 2010)).

Further, permitting this litigation to continue in view of an active reexamination is disadvantageous to both BAC and SPX.  "Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions." *Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 U.S. Dist. LEXIS 26158, at *3-4 (D. Del. Jan. 29, 2001).  Absent a stay, BAC would be responsible for concurrently expending substantial resources on the *Ex parte* reexamination before the Patent Office and the litigation before this Court.

Finally, spending time and resources to interpret, prosecute and/or litigate a claim that is likely to be invalidated or amended benefits no one.  Thus, granting a stay pending *Ex parte* reexamination would not be prejudicial to BAC.

## V.       CONCLUSION

For the reasons set forth above, SPX respectfully requests this Court to stay the litigation in its entirety until completion of the reexamination proceedings of the '782 patent including all appeals, and the issuance of a Reexamination Certificate.

Dated: February 25, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP


By: /s/ *Michael E. Anderson*
Michael E. Anderson (Bar No. 800996)
(*admitted pro hac vice*)
Phone: (202) 861-1575
manderson@bakerlaw.com

Kenneth J. Sheehan (800798)
(*admitted pro hac vice*)
Phone: (202) 861-1682
ksheehan@bakerlaw.com

Andres F. Arrubla (800796)
(*admitted pro hac vice*)
Phone: (202) 861-1712
aarrubla@bakerlaw.com

**Baker & Hostetler LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Defendant SPX Cooling
Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2014, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system, which will automatically send email notification of

such filing to counsel of record:

Jeffrey A. Wolfson, Esq.
Haynes and Boone, LLP
1615 L. Street, N.W., Suite 800
Washington, DC 20036
Phone: 202-654-4565
Fax: 202-654-4501
jeff.wolfson@haynesboone.com

*/s/ Michael E. Anderson*
Michael E. Anderson